**Howard HOSSMAN, Plaintiff-Appellant,**

v.

**Larry BLUNK, Sheriff, Wayne County Jail of Richmond, Indiana, et al., Defendants-Appellees.**

No. 85–2408.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 7, 1986.\*

Decided Feb. 26, 1986.

Howard Hossman, pro se.

Kent G. Klinge, Klinge & Snow, Richmond, Ind., for defendants-appellees.

Before CUMMINGS, Chief Judge, WOOD and RIPPLE, Circuit Judges.

PER CURIAM.

Plaintiff's *pro se* amended complaint recites incidents that occurred from March through July of 1982, while he was a prisoner at the Wayne County Jail in Richmond, Indiana.[1] Defendants Joseph Estes, Douglas Coffin, and Robert Lipps were all deputy sheriffs, apparently employed as guards at the jail. Defendant Larry Hartley was a higher ranking deputy also employed at the jail. Scott Blunk was the commander of the jail, and defendant Larry Blunk was the elected county sheriff. As sheriff he had authority over the jail. Although the heading of the complaint lists

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

1. Plaintiff is currently incarcerated at the Indiana State Prison in Michigan City. Although not alleged in the complaint, defendants state in their brief that plaintiff was serving time on state convictions but was transferred to Wayne County Jail during the pendency of proceedings on other criminal charges.

the job titles of the defendants and makes no explicit reference to individual or official capacity, paragraph 9 of the complaint states in part, "each Defendant is sued individually and in his official capacity."

Howard Hossman filed suit against the defendants for alleged violations of 42 U.S.C. §§ 1983 and 1985. Plaintiff appears before us *pro se*, as he did in the district court. He alleged that, during the evening of April 19, 1982, the three guards took him from his cell to the drunk tank in the jail where they beat him with their fists and a nightstick, pushed him against a wall, and repeatedly kicked him. They then stripped him[2] and left him in the drunk tank. Shortly thereafter, one guard returned by himself and subsequently allowed plaintiff to dress, but also ordered him into a straitjacket. The guard then proceeded to beat plaintiff until he was unconscious. Mr. Hossman awoke the next morning covered with blood. He then asked defendant Hartley to provide him with medical care, but Mr. Hartley refused.

Besides alleging this major incident on April 19–20, plaintiff listed various other incidents. In July 1982, Mr. Hartley caused plaintiff's wrists to bleed because handcuffs were attached extra tight. On other occasions Mr. Hartley refused to provide plaintiff with medical care, lawbooks, and toilet tissue that were specifically requested.[3] The complaint alleged that, at least once, water was poured on Mr. Hossman while in his cell, and on another occasion he was sprayed with a firehose. On a couple of occasions threats were relayed from Mr. Hartley to Mr. Hossman and, on another occasion, Mr. Hartley advised Mr. Hossman to plead guilty and leave the jail or he would be beaten. Additionally, following the initial beating on April 19, one guard told Mr. Hossman to be nice to Mr.

Hartley in the future. Mr. Hossman suffered physically and psychologically from his treatment, including a permanent hearing loss.

Plaintiff alleged, on information and belief, that it was the practice and policy of the defendants to beat inmates and violate their civil rights. Mr. Hossman also alleged that he informed the jail commander about the prisoner abuse and that he filed twenty to thirty grievances with the sheriff, who knew or should have known of the "get tough" policies and practices of the prison. He further alleged that the sheriff had the power and duty to correct abuses.

Defendants moved to dismiss the amended complaint on the grounds that they were immune under the Indiana Tort Claims Act and that the complaint was frivolous and malicious under 28 U.S.C. § 1915(d). Defendants subsequently attached four affidavits to their supporting memorandum. All four affidavits were identical except that each was signed and attested to by a different defendant. The affidavits were those of Messrs. Estes, Coffin, Lipps, and Hartley; the Blunks provided no affidavits of their own. Each affidavit stated that Mr. Hossman was a violent and abusive inmate, that the affiant had never applied excessive force to Mr. Hossman, and that Mr. Hossman was provided with medical care when necessary. After being advised by the district court regarding the procedures for opposing a summary judgment motion, plaintiff responded with his own affidavit, restating the abuses alleged in his amended complaint, but not specifying which defendants performed the abuse. Attached to his original complaint, and apparently also attached to his supplemental response to the motion to dismiss, was a sworn statement by a former employee at the jail, Barbara Henderson.[4] Ms. Hender-

**2.** One guard also took Mr. Hossman's phone numbers, legal notes, and coffee which were never returned to him.

**3.** The complaint also alleged that defendants denied the plaintiff sanitary necessities such as toothpaste, a razor, and drinking cups. Additionally, Mr. Hossman was not permitted to have any lawbooks and on one occasion he was

not allowed to eat breakfast, shave, or shower before making a court appearance.

**4.** The statement is in the form of questioning by an attorney who was apparently representing Mr. Hossman at the time. This statement was taken August 30, 1982, prior to the filing of plaintiff's suit. No opposing attorney was present when the statement was taken. Al-

son's statement describes the attack on Mr. Hossman by the three guards, which she witnessed on the jail's closed circuit monitors. Ms. Henderson also heard statements by these three in which they described acts committed while out of view of the camera. Furthermore, she described attacks by the same three guards on at least three other prisoners during late 1981.

Although not argued by the defendants,[5] the district court reasoned that plaintiff had sued all the defendants in their official capacity only and thus the suit was against their employer, Wayne County. Since this is a § 1983 suit against a municipal entity, it was necessary that plaintiff allege that his injuries were the result of a custom or policy of the County. *See Monell v. Department of Social Services*, 436 U.S. 658, 690–91 & n. 55, 98 S.Ct. 2018, 2035–36 & n. 55, 56 L.Ed.2d 611 (1978); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 870 (7th Cir.1983); *Rollins v. Farmer*, 731 F.2d 533, 535 (8th Cir.1984). Finding no such allegations, the district court dismissed the complaint. Plaintiff appeals.

## I

Initially, we must consider whether the defendants were sued only in their official capacities. In determining that they were only sued in their official capacities, the district court apparently looked only to the heading of the complaint in which plaintiff listed the job titles of the defendants. Finding no express reference to individual capacity in the heading, the district court determined that the defendants were only sued in their official capacities. However, in determining the capacity in which a defendant is being sued, the body of the complaint is to be examined as well as the heading. *Kolar v. Sangamon County*, 756 F.2d 564, 568 (7th Cir.1985); *Saxner v. Benson*, 727 F.2d 669, 673 (7th Cir.1984), *aff'd sub nom., Cleavinger v. Saxner*, —— U.S. ——, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). Paragraph 9 of plaintiff's amended complaint states explicitly that the defendants were sued in both their individual and official capacities; that statement is sufficient to sue for individual liability. *Saxner*, 727 F.2d at 673; *Rollins*, 731 F.2d at 536 n. 3.

Since the court below determined that the suit only concerned defendants' official capacities, it considered only whether the allegations sufficiently alleged claims for deprivations committed in the defendants' official capacities. Therefore, on this appeal, we will only consider the adequacy of allegations of official liability, leaving it to the district court to determine, in the first instance, the adequacy of allegations of individual liability.

■ Contrary to the holding of the court below, plaintiff adequately alleged claims for municipal liability under § 1983 and should therefore be given the opportunity to proceed on his claims that the defendants are liable in their official capacities. For a municipality to be liable under § 1983, the plaintiff must prove that the constitutional deprivation was caused by a municipal policy or custom. *Oklahoma City v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981); *Monell*, 436 U.S. at 690–91, 694, 98 S.Ct. at 2035–36, 2037. It is clear that, at trial, such a custom or policy cannot be inferred

though not attached to the supplemental response that is part of the record in this court, the supplemental response refers to a "deposition" being attached to it which we assume refers to Ms. Henderson's statement. But even if not part of plaintiff's response to the summary judgment motion, it is attached to the original complaint and therefore should be considered under Fed.R.Civ.P. 56(c). *See also Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir.1985)

(technical rigors of summary judgment do not apply to *pro se* prisoners).

**5.** Without discussion, the court rejected the arguments actually raised by the defendants in the district court. The defendants do not raise them on appeal so we need not consider them, but we agree with the district court that these arguments are unpersuasive.

from a single deprivation alone.[6] *Tuttle*, 105 S.Ct. at 2435–36; *id.* at 2440 (Brennan, J., concurring). It is also the rule in this circuit that boilerplate allegations of municipal policy or custom, without any *factual* allegations to support the general allegations, does not make out a § 1983 claim against a municipality. *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 202 (7th Cir.1985); *Strauss v. City of Chicago*, 760 F.2d 765, 767–69 (7th Cir.1985). Alleging one specific incident in which the plaintiff suffered a deprivation and generally alleging a custom or policy will not be adequate; the plaintiff must allege a specific pattern or series of incidents that support the general allegation. *See id.; Powe v. City of Chicago*, 664 F.2d 639, 650–51 (7th Cir.1981).

In evaluating plaintiff's *pro se* complaint, we construe his allegations liberally, applying substantially less stringent standards than those applied to complaints drafted by professional counsel. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam); *Jones v. Morris*, 777 F.2d 1277, 1279 (7th Cir. 1985). The defendants filed a motion to dismiss. In granting the motion, the district court considered affidavits submitted by both parties. We will treat the district court's decision as an order granting summary judgment in favor of the defendants. Considering the plaintiff's complaint, his affidavit and Ms. Henderson's affidavit, we do not believe that the defendants were entitled to judgment as a matter of law at this stage in the proceedings. The complaint and the affidavits, read liberally, allege a pattern or policy which may have deprived the plaintiff of his constitutional rights to due process, to meaningful access to the court and to be free from cruel and unusual punishment.

██ The claim for relief under 42 U.S.C. § 1985, however, was properly dismissed. Plaintiff does not allege any racial or class-based discrimination, as required for claims under sections 1985(2) and 1985(3), nor any conspiracy to prevent a public official from discharging official duties, as required for claims under section 1985(1). *Grimes v. Smith*, 776 F.2d 1359, 1363 (7th Cir.1985); *Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir.1985).

## II

The district court dismissed plaintiff's entire complaint. We reverse the judgment of the district court, reinstating all claims against the defendants in both their individual and official capacities, except for any claim under § 1985. Although the individual capacity claims are reinstated, since improvidently dismissed, we express no opinion as to whether any particular defendant may be held liable in his individual capacity.

██ We also note that the district court has the discretionary power under 28 U.S.C. § 1915 to appoint counsel to represent indigent plaintiffs. *See Maclin v. Freake*, 650 F.2d 885, 886–89 (7th Cir.1981) (per curiam). On remand the district court should apply the factors outlined in *Maclin v. Freake* and make a fresh determination regarding whether it is appropriate to appoint counsel for plaintiff. *See Matzker*, 748 F.2d at 1151 (Cudahy, J., concurring).

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

---

**6.** This rule apparently does not apply in cases where the policy is express, *see, e.g., Monell*, 436 U.S. at 694–95, 98 S.Ct. at 2037–38, nor when the policy itself is unconstitutional (in contrast to the incidents caused by the policy being unconstitutional). *Tuttle*, 105 S.Ct. at 2435–36 (plurality opinion). *But see id.* at 2441 n. 8 (Brennan, J., concurring) (rejecting the "metaphysical" distinction of the plurality opinion); *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir.1981) (in accord with Justice Brennan's concurrence). We need not reach this issue in the present case because plaintiff alleged more than a single deprivation.