Cheryll GRAY, f/k/a Cheryll Lengyel, Plaintiff–Appellant,

v.

COUNTY OF DANE, Defendant–Appellee.

No. 87–2770.

United States Court of Appeals, Seventh Circuit.

Argued March 28, 1988.
Decided July 28, 1988.

A. Steven Porter, Madison, Wis., for plaintiff-appellant.

Judith H. Toole, Dane County Corp. Counsel, Madison, Wis., for defendant-appellee.

Before BAUER, Chief Judge, CUDAHY and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Cheryll Gray sued Dane County, Wisconsin, under section 1983 [1] and Title VII [2] for sexual harassment, wage discrimination and workplace retaliation against her for protesting against the County's employment practices. The district court dismissed the section 1983 count of Gray's complaint for failure to state a claim upon which relief could be granted. The Title VII count was later dismissed with prejudice pursuant to a stipulation by the parties. Gray appeals from the dismissal of her section 1983 claim and also contests the district court's refusal, prior to the stipula- tion of the parties, to dismiss the Title VII count without prejudice. We affirm the dismissal and decline on mootness grounds to assess the refusal to dismiss the Title VII claim without prejudice.

## I.

For purposes of reviewing the dismissal of the section 1983 claim, we summarize the facts as they appear in Gray's complaint. In March 1977, Gray, who had been working for the County since 1974, was hired for the position of Communication Officer I in the Dane County Sheriff's Department. She and four co-workers who started at roughly the same time were the first five women to hold nonclerical positions in the Department. Thereafter ensued a protracted series of disputes between Gray and her supervisors over sexual harassment and discrimination at the Sheriff's Department and over on-the-job retaliation against Gray for protesting these conditions.

Soon after Gray began her new job, a supervisor solicited sexual favors from her, promising employment advantages in return. Gray complained to other supervisors both about the supervisor who had propositioned her and about co-workers whom Gray suspected of having accepted the bargain. Complaint ¶ 10. Gray also became aware of wage discrimination in the Sheriff's Department. In July 1979, Gray and two female co-workers filed union grievances alleging that the Sheriff's Department was discriminating against women Communications Operators by paying them less than the men who had formerly held those same jobs. *Id.* ¶ 11. Six months later, Gray renewed her sexual harassment charge in a complaint to the Dane County Affirmative Action Committee, adding charges that her supervisors had singled her out for unfavorable treat-

---

1. Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1982), as amended, provides in part:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. *See* Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e et seq. (1982).

ment in retaliation for her earlier protests. She alleged that her supervisors penalized her through adverse shift assignments and unjustified opposition to requests for sick leave and vacation time. *Id.* ¶¶ 12, 20–21. The complaint does not disclose the results of these early efforts to halt the discrimination and retaliation at the Sheriff's Department.

In August 1980, Gray filed complaints with the Equal Rights Division of the Wisconsin Department of Industry, Labor and Human Resources (the "ERD") and the federal Equal Employment Opportunity Commission. Five months later, an ERD investigator determined that probable cause existed to support Gray's claims of discrimination and retaliation. Gray and the County settled the ERD claim in September 1981, and the case was dismissed.

Two years later, Gray, who had apparently changed jobs within the Sheriff's Department, encountered a second instance of wage discrimination. She filed a grievance with the County alleging that she and the other jail booking clerks, an all-female group at the time, were being paid less than the men who had previously performed the same duties. In December 1984, this dispute was settled, when the County agreed to a retroactive increase in the pay grades of the booking clerks. *Id.* ¶ 16.

Finally, in April 1985, Gray "filed a grievance with defendant alleging that defendant had unfavorably changed her schedule, reprimanded her, and shortened her lunch hour ... in retaliation for her [1983] grievance." This grievance reached the personnel committee of the Dane County Board of Supervisors. The committee, according to the complaint, first "recommended," then "pressure[d]" the Sheriff to reassign Gray to another supervisor and a job more appropriate to her qualifications. *Id.* ¶ 17. Gray broadly asserts that her supervisor's discriminatory and retaliatory actions were undertaken "with the knowl-

edge and ratification of ... the sheriff and chief deputy" and "the express or tacit approval of ... members of defendant's board of supervisors." *Id.* ¶¶ 23–24. However, the complaint is devoid of specific factual allegations that support this claim.

Gray filed her complaint in the district court on January 23, 1987. The County counterclaimed, asserting that Gray's district court action constituted an actionable violation of the September 1981 settlement of Gray's ERD complaint, which provided in part that Gray would not use events described in her ERD complaint as the basis for a later action. In April 1987, the district judge dismissed Gray's section 1983 count for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6). The district judge declined to dismiss the Title VII count, however, finding that the complaint had made out a Title VII claim by alleging that the County had punished her for her complaints about sexual harassment and wage discrimination.

The dismissal of only the section 1983 count left Gray in an awkward position. The remedies authorized by Title VII include "reinstatement or hiring ..., with or without back pay ..., or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g) (1982). This court has held that "other equitable relief" does not include compensatory damages for injuries unconnected to discharges in violation of Title VII or nominal damages which plaintiffs might seek as a form of public vindication or as a basis for the award of attorneys' fees. *Hale v. Marsh,* 808 F.2d 616, 620 (7th Cir.1986); *Bohen v. City of East Chicago,* 799 F.2d 1180, 1183–84 (7th Cir.1986). Gray therefore faced the prospect of a full-blown trial on the Title VII count for what her attorney believed would be, at most, a minimal recovery. (In light of *Bohen,* this assessment probably *overestimated* the dollar value of Gray's Title VII claim.)[3] After delaying for five

---

3. *Bohen* affirmed the rejection of an entire Title VII claim based upon a finding that the plaintiff had been fired for cause and therefore had no back pay remedy. The decision expressly ruled out awards of nominal damages to plaintiffs who remained employed. 799 F.2d at 1184. This suggests that the County could have obtained summary judgment on the Title VII count simply by establishing that Gray never left the County's employ.

months following dismissal of her section 1983 claim until only three weeks before the scheduled trial date, Gray moved to dismiss the Title VII count without prejudice and to amend the complaint to add individual defendants under the section 1983 count. At the pretrial conference, held on the day when this motion was filed, the district judge summarily rejected Gray's request to join individual defendants for the appeal of a claim that had already been dismissed; he also ruled that the Title VII count would only be dismissed at such a late date on terms amenable to the County. Tr. at 5–6 (Sept. 18, 1987). On September 30, 1987, the district judge entered an order formally denying the motion to amend and, pursuant to a stipulation of the parties, dismissing the Title VII claim with prejudice and the county's counterclaim without prejudice.[4]

## II.

The April 23, 1987 order recited two justifications for dismissing the section 1983 count of Gray's complaint under rule 12(b)(6). First, the judge found that Gray had failed to allege that the discrimination and retaliation that she experienced were attributable to a policy or custom of Dane County, rather than to the unauthorized actions of particular officials. He also found that the alleged actions of county employees did not violate the equal protection clause, since Gray's complaint dealt principally with retaliation based on conduct rather than discrimination based on membership in a protected class, or based on the first amendment (as incorporated by the fourteenth amendment), since the complaint described efforts by Gray to vindicate personal rights rather than to speak out on matters of broad public concern.

We uphold the district court's first ground for dismissing the complaint, making it unnecessary for us to consider whether Gray properly pleaded deprivations of the equal protection clause or the first amendment.

The system of notice pleading embodied in the federal rules of civil procedure does not favor dismissals for failure to state a claim. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Despite their liberality on pleading matters, however, the federal rules still require that a complaint allege facts that, if proven, would provide an adequate basis for each claim. *Rodgers v. Lincoln Towing Serv., Inc.,* 771 F.2d 194, 198 (7th Cir. 1985); *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985); *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 654 (7th Cir. 1985). In ruling on motions to dismiss, courts must presume that all facts fairly alleged in the complaint are true. The courts are not obliged, however, to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law. *See American Nurses' Ass'n v. Illinois,* 783 F.2d 716, 724 (7th Cir.1986); *Vilter Mfg. Co. v. Loring,* 136 F.2d 466, 468 (7th Cir.1943). *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1363 at 658–59 (1969).

The principle that municipalities may only be held liable for constitutional violations arising under formal policies or well-established customs derives from *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* found that section 1983 imposes liability on municipalities for deprivations pursuant to official policy or entrenched practices, but bars liability for actions that

---

**4.** We do not believe that the district court, by dismissing the counterclaim without prejudice, retained control over this case and deprived this court of jurisdiction under 28 U.S.C. section 1291. Claims dismissed without prejudice are not unappealable per se. *United States v. Wallace & Tiernan Co.,* 336 U.S. 793, 794 n. 1, 69 S.Ct. 824, 825 n. 1, 93 L.Ed. 1042 (1949). This court regards dismissals without prejudice as unappealable interlocutory orders "only when lower courts, either expressly or by implication, retain jurisdiction over the disputes to permit complainants to save by amendment otherwise deficient pleadings." *In re Ohio River Co. v. Carrillo,* 754 F.2d 236, 238 (7th Cir.1985). Here, there is no indication that the district court intended to retain jurisdiction. The clear purpose behind the stipulation dismissing the counterclaim without prejudice and the Title VII claim with prejudice was to end the proceeding in the district court and to permit immediate appeal of the section 1983 dismissal.

can be tied to municipalities only under a *respondeat superior* theory. *Id.* at 691–94, 98 S.Ct. at 2036–38; *see Pembaur v. City of Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 1297–98, 89 L.Ed.2d 452 (1986).

This limitation on municipal liability has required the courts to determine whether particular actions by municipal employees, undertaken without formal authorization, can implicate the municipality by establishing the existence of an entrenched practice with the effective force of a formal policy. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 870 (7th Cir.1983). This court has held that "the isolated, intentional acts of an officer [without authority to set municipal policy] do not establish municipal liability under Section 1983," *Rodgers,* 771 F.2d at 202,[5] and has repeatedly affirmed dismissals of section 1983 claims that seek to impose municipal liability based on such isolated acts. *See Henry v. Farmer City State Bank,* 808 F.2d 1228, 1237 (7th Cir.1986); *Strauss,* 760 F.2d at 767–68; *see also City of Oklahoma City v. Tuttle,* 471 U.S. 808, 821, 105 S.Ct. 2427, 2435, 85 L.Ed.2d 791 (1985) (plurality opinion), *id.* at 830–31 (Brennan, J., concurring). However, "where the plaintiff alleges a pattern or a series of incidents of unconstitutional conduct, ... the courts have found an allegation of policy sufficient to withstand a dismissal motion." *Powe v. City of Chicago,* 664 F.2d 639, 650 (7th Cir.1981); *see Hossman v. Blunk,* 784 F.2d 793, 797 (7th Cir. 1987) (per curiam).[6]

Gray's complaint alleges more than a single instance of unconstitutional conduct. Although Gray's allegations pertain pri-marily to actions taken against her personally, she also refers to discrimination against other female employees.[7] Moreover, Gray's personal claims span a period of six years and include specific allegations of two instances of sexual harassment, wage discrimination in two different positions and numerous forms of on-the-job retaliation for her complaints about these incidents.[8]

If this were a full account of Gray's complaint, these allegations would be sufficient under *Hossman* and *Powe* to state a claim of constitutional violations pursuant to a municipal practice or custom. But Gray's complaint does not stop with these allegations. It also describes Gray's use of the County's internal grievance procedures and the County's significant efforts to address Gray's complaints. The complaint states that on December 27, 1983, Gray "filed a grievance with defendant alleging that she and other jail booking clerks, who were all women, were being improperly paid less than had the male employees who had performed the same duties previously." Complaint ¶ 16. In response to this grievance, the County placed female jail clerks in a higher job classification, effective from the date the grievance was filed. *Id.* On April 8, 1987, the complaint alleges, Gray filed another grievance with the County alleging on-the-job retaliation for her equal pay complaint. *Id.* ¶ 17. This grievance reached the personnel committee of the County's Board of Supervisors, which overrode the sheriff's opposition to Gray's claim and directed that Gray be reassigned so that she could work under a different supervisor and perform duties ap-

---

**5.** An unconstitutional policy can be inferred, however, from a single decision or act by an official or body responsible for setting policy. *See, e.g., Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 283–84 (7th Cir.1986).

**6.** *See also Kasper v. Board of Election Comm'rs,* 814 F.2d 332, 343–44 (7th Cir.1987) (Board's knowing toleration of vote fraud by its agents would constitute de facto policy); *Bohen,* 799 F.2d at 1189 (plaintiff shows custom or practice of sexual harassment by demonstrating partic-

ipation of "high-ranking, supervisory, and management officials responsible for working conditions"); *Wolf–Lillie,* 699 F.2d at 870 ("pervasive pattern of executing invalid writs of restitution" sufficient to create municipal liability).

**7.** *See* Complaint ¶ 11 ("sexually degrading" remarks directed to three women who filed equal pay complaint); *id.* ¶¶ 16–17 (women jail booking clerks paid less than men who previously held jobs).

**8.** *See* Complaint ¶¶ 10–11, 16–17, 20–21.

propriate to her employment grade. *Id.*[9]

The existence of workable review procedures at the County level, procedures from which Gray plainly derived some measure of satisfaction, undermines her claim that there was a custom or practice of discrimination and retaliation so well-established as to embody unwritten municipal policy. By the complaint's own terms, the unconstitutional conduct of officials in the Sheriff's Department was repeatedly undercut, first by the County's settlement of an equal pay claim and later by a directive that the Sheriff redress Gray's harassment and retaliation complaints by transfering her to another supervisor and job slot. The offending officials clearly were not conforming to informal practices " 'so permanent and well settled as to constitute a "custom or usage" with the force of law.' " *City of St. Louis v. Praprotnik*, —— U.S. ——, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (plurality opinion) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)); *id.* 108 S.Ct. at 931 (Brennan, J., concurring) (same).[10] Reading the complaint liberally, we may assume that the County's grievance procedures were too slow and too lenient toward wrongdoers to prevent every violation of employees' constitutional rights by supervisors. But the question is not whether the system was perfect, but whether it could be said to have fostered the violations described in the complaint. Given the high degree of culpability that must be shown to establish municipal liability for acquiescence in employees' wrongdoing, *Jones v. City of Chicago*, 787 F.2d 200, 204–05 (7th Cir.1986); *Lenard v. Argento*, 699 F.2d 874, 885 (7th Cir.), *cert. denied*, 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983), the allegations of municipal misconduct contained in the complaint fall short of the mark.

■ The complaint as a whole suggests at most a custom or practice within the Sheriff's Department of harassment, discrimination and retaliation within the gaps created by imperfect enforcement of contrary policies. We do not rule out the possibility that a section 1983 plaintiff in some future case might show that a municipality's formal procedures for redressing grievances served only to disguise entrenched practices of violating employees' rights. Gray's complaint, however, alleges no facts in support of such a claim against Dane County. Viewed in its entirety, the complaint alleges constitutional violations by individual supervisory employees, but it fails to allege that these violations took place under a policy or established practice.[11]

9. According to the complaint, Gray had sought redress through her union, the Dane County Affirmative Action Committee and the ERD. Complaint ¶¶ 11–12, 13. The complaint does not indicate what came of the first two of these efforts (though a weak inference against the pervasive practice Gray must show might be drawn from the existence of a Dane County Affirmative Action Committee whose functions included processing claims such as Gray's). The proceeding before the ERD produced, according to Gray, "an initial determination finding that probable cause existed to believe plaintiff had been discriminated against because of her sex and retaliated against" because of her complaints. *Id.* ¶ 14. Soon thereafter the County settled the claim on terms amenable to Gray.

10. The grievance mechanisms identified in Gray's complaint distinguish this case from *Bohen*, where "[c]omplaints by the victims of sexual harassment were addressed superficially, if at all, and the department had no policy against sexual harassment." 799 F.2d at 1189. *Compare also Iskander v. Village of Forest Park*, 690 F.2d 126, 129 (7th Cir.1982) (evidence that police department customarily strip searched suspects in front of window facing a corridor creates triable issue of municipal liability); *Powe*, 664 F.2d at 649–51 (complaint's allegations of repeated arrests under erroneous warrant permit inference that official municipal procedures are deficient).

11. These actions by the County are also inconsistent with any claim that the Sheriff's Department housed a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481, 106 S.Ct. at 1299 (plurality opinion); *see id.* at 486, 106 S.Ct. at 1301–02 (White, J., concurring); *see also Praprotnik*, 108 S.Ct. at 926 (plurality opinion) ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality.").

## III.

Gray's final argument, that the district judge abused his discretion when he refused to dismiss the Title VII claim without prejudice, requires little discussion. Gray argues that dismissal without prejudice should have been granted because this disposition would have terminated the Title VII claim as finally as would have dismissal with prejudice. Title VII allows plaintiffs only ninety days in which to bring suit following the receipt of a right to sue letter. 42 U.S.C. § 2000e–5(f)(1) (1982). Gray received a right to sue letter on or before June 15, 1987, and was therefore time-barred from filing a new Title VII claim by the time she filed her motion to dismiss on September 15, 1987. There may be potential differences in the collateral consequences of dismissals with and without prejudice that are unrelated to the viability of the Title VII claim; but Gray has represented that none of these ramifications is relevant here. During the September 28, 1987 hearing on Gray's motion to dismiss without prejudice Gray's counsel stated: "I don't see how there could be any prejudice to defendants and I could only see that the efficiencies of justice and the Court and the parties would be promoted by such a dismissal." Tr. at 4 (Sept. 18, 1987). In her submissions to this court Gray again suggests that the two forms of dismissal are functionally equivalent in the circumstances of this case. Moreover, on September 28, 1987, Gray filed a superseding motion with the district court *requesting* dismissal with prejudice in the event that the district court declined to dismiss without prejudice. In view of Gray's repeated assertions that dismissals with or without prejudice are functionally equivalent in the present circumstances, the district court's refusal to dismiss without prejudice is unreviewable based on "the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971)).

## IV.

Gray elected to bring her section 1983 claim against the County alone despite clear indications, described in the complaint itself, that the County employees who violated her rights were flouting County policy rather than following well-established custom. When the dismissal of the section 1983 count revealed that this litigation strategy was ill-conceived, Gray waited until the eve of trial on the remaining Title VII count to propose an amendment to the complaint in an effort to join individual defendants on appeal who had not been heard in the district court. If the allegations of the complaint are correct, Gray may well have had a viable cause of action against some of her superiors as individuals. Her likely inability to obtain a hearing on these claims as matters now stand is not, however, attributable to any error by the district court.

The district court's refusal to dismiss the Title VII count without prejudice, requested by Gray in the same eleventh-hour motion, seems an unlikely target for a charge of abuse of discretion. The district judge's handling of the Title VII claim is not reviewable, however, since Gray's own representations render this issue moot.

AFFIRMED.