Laneer WINDER, Plaintiff,

v.

Spencer LEAK, et al., Defendants.

No. 90 C 3272.

United States District Court,
N.D. Illinois, E.D.

April 7, 1992.

Laneer Winder, pro se.

George P. Blake, Mark Daniel Chapleau, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for plaintiff.

David Richard Butzen, Terry L. McDonald, Cook County State's Attys. Office, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Laneer Winder, an inmate awaiting trial at the Cook County Department of Corrections ("CCDOC"), brings this civil rights action against James Bulley, Captain of the Residential Treatment Unit ("RTU") at CCDOC, and Correctional Officers Mario Ledesma, Michael Sanders and Shirley Ashley. Defendants Ledesma and Bulley now move for summary judgment on Counts I, II and IV of Winder's second-amended complaint. For the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part.

## I. SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

## II. BACKGROUND

As a pretrial detainee, Winder is currently housed in RTU because of a serious back injury sustained in an unrelated incident prior to his incarceration. On May 13, 1990, while in transit from his tier to the

recreational area, Winder was pushed to the ground by Correctional Officer Ledesma. The circumstances precipitating Ledesma's aggression are as follows. Winder, who at the time was purportedly walking with leg braces, stopped in route to the recreational area in order to regain his strength. Ledesma, who claims he was unaware of Winder's medical condition, asked Winder to continue on his way. Endeavoring to explain to Ledesma that he needed to rest, Winder did not move. In an effort to speed Winder along, Ledesma pushed Winder from behind. Consequently, Winder fell to the floor, hitting a ledge which extended from a door in the hallway. Ledesma then apologized, claiming he did not know that Winder had been walking with the aid of braces. In light of the resulting pain, Winder was taken to Cermak Hospital, where x-rays were taken of his lower back. Winder was told that these x-rays were negative.

Winder complained about this treatment to Captain Bulley, threatening to file a grievance against Ledesma with the proper authorities. According to Winder, Bulley informed Winder that, if he filed such a grievance, Bulley would instruct Ledesma to file a disciplinary report against Winder and that, consequently, he would be placed in isolation. Winder proceeded to file the grievance against Ledesma, prompting Ledesma to immediately process a disciplinary report charging Winder with using abusive language, threatening the staff, refusing to obey orders and being in an unauthorized area. Ledesma's disciplinary report was the subject of a hearing, conducted on May 14, 1990. Winder contends that at this hearing he was denied the opportunity to call witnesses in his defense. Subsequent to the Board's finding that Winder "committed the prohibited acts," he was placed in isolation for twelve days.

In his second-amended complaint, Winder alleges two additional incidents giving rise to claims against Sanders and Ashley. While Winder concedes that the facts surrounding these occurrences do not directly impact on Ledesma and Bulley, Winder submits that they are important to the present motion in that they support the existence of a policy or custom of using the prison disciplinary process as retribution for the filing of a grievance. The first episode occurred on June 6, 1990, at which time Winder refused to allow another inmate, whom he believed was a homosexual, to push Winder in his wheelchair from Cermak Hospital back to his dorm in RTU. Winder claims that he feared that other inmates would suspect that he was a homosexual. Winder "had words" with the inmate, but refused to inform Sanders of what was said. In response, Sanders purportedly slapped Winder across the face. Winder filed a grievance complaining of Sanders' conduct. At some point shortly before or shortly after Winder decided to file his grievance, Sanders wrote a disciplinary report against Winder charging him with using disrespectful language, making threats and disobeying orders. Again, a hearing was held and Winder allegedly was prohibited from presenting witnesses in his defense. After a finding that he committed the acts as charged, Winder was sent to isolation for three days.

Finally, Winder contends that on August 21, 1990, defendant Ashley cursed at Winder and took his wheelchair notwithstanding his protestations. As a result of this incident, Ashley filed a disciplinary report against Winder charging him with using disrespectful language, making threats and disobeying orders. Winder claims that he expressed his intent to file a grievance against Ashley, but was told by Ashley that if he did so "he would be in more trouble than he already was." Consequently, Winder did not file a grievance. Once again, Winder was placed in isolation after a hearing, at which the Board found that he committed the alleged violations. At this particular hearing, however, Winder did not seek to introduce defense witnesses, believing that such a request would be futile.

Winder filed this action pursuant to 42 U.S.C. § 1983, against Captain Bulley and Officers Ledesma, Sanders and Ashley. In Count I, Winder alleges that Ledesma's excessive use of force violates the Eighth Amendment's prohibition against cruel and

unusual punishment as applied to the states through the Fourteenth Amendment. Count II pleads a cause of action against all defendants in their official capacities, claiming that defendants used the prison disciplinary process as retribution for the filing of grievances. Count III realleges the same conduct described in Count II, seeking to hold the defendants liable in their individual capacities. Finally, in Count IV, Winder alleges that each of the defendants violated his due process rights by refusing and/or discouraging Winder from presenting witnesses in his defense at the CCDOC disciplinary hearings.

### III. EXCESSIVE USE OF FORCE (COUNT I)

The gravamen of Ledesma's argument in support of his motion for summary judgment on Count I of Winder's second-amended complaint is twofold. First, Ledesma claims that his actions were not malicious, but rather constituted a necessary response to an inmate who disobeyed orders. Second, Ledesma contends that the force exerted was not "excessive," as evinced by Winder's lack of injury.

It is well settled that " 'the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.' " *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (quoting *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977)). In *Whitley,* the Court held that, in the context of a prison riot, "the question of whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing pain.' " *Id.* at 320–21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). Recognizing that "[m]any of the concerns underlying ... [the] holding in *Whitley* arise whenever guards use force to keep order," the Court in *Hudson v. McMillian,* — U.S. —, —, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992), held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is that set out in *Whitley.*"

■ The question of whether Ledesma acted out of malice or, on the other hand, in good faith is a question of intent and motive. Ledesma argues that plaintiff disobeyed a direct order to move from an unauthorized area. Conversely, Winder claims that he was not given a direct order and that he was approaching, but not in, an unauthorized area. Ledesma contends that, unaware of Winder's condition, he pushed Winder in order to maintain discipline by enforcing the order. However, in the event that Ledesma did not give Winder such an order, it is possible for a reasonable jury to conclude that Ledesma acted not to maintain discipline, but rather out of malice. Further, Winder insists that he was wearing leg braces at the time he was pushed. That Winder was in fact wearing such braces belies Ledesma's assertion that he was unaware of Winder's condition, and therefore conceivably gives rise to an inference of malice. True, Winder concedes that Ledesma subsequently apologized, tending to indicate good faith. Nonetheless, a reasonable jury could conclude that such conciliatory conduct after the fact amounts to nothing more than camouflage for sadistic behavior. In sum, like the vast majority of cases involving intent and motive, this dispute cannot be appropriately resolved by summary judgment.

■ Respecting Ledesma's contention that Winder has not demonstrated a cognizable injury, the Supreme Court recently dispelled the notion that a plaintiff must prove "significant injury" in order to prevail on an excessive use of force claim. *Hudson,* 112 S.Ct. at 1000. In *Hudson,* the Court held that a prison inmate who suffered only minor bruises, facial swelling, loosened teeth and a cracked dental plate could maintain a § 1983 claim based on excessive use of force, reasoning that "[w]hen prison officials maliciously and sadistically use force to cause harm, contem-

porary standards of decency are *always* violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* (emphasis added). The Court, however, noted that "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* (quoting *Whitley,* 475 U.S. at 327, 106 S.Ct. at 1088). The exertion of force against a handicapped individual, knocking that person to the floor and causing pain, is not *de minimis* for Eighth Amendment purposes.

Accordingly, Ledesma's motion for summary judgment on Count I of Winder's second-amended complaint is denied.

## IV. RETALIATORY USE OF THE PRISON DISCIPLINARY PROCESS (COUNT II)

It is settled law that in order to hold either Ledesma or Bulley liable in their official capacities, Winder bears the burden of establishing that the claimed constitutional violation—*i.e.,* using the prison disciplinary process as retribution for the filing of a grievance—was caused by an "official policy." *Winder v. Leak,* No. 90–3272, slip op. at 6, 1991 WL 230826 (N.D.Ill. Oct. 25, 1991) (citing *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978); *Parsons v. Bourff,* 739 F.Supp. 1266 (S.D.Ind.1989)). In the absence of an official policy statement promulgated by the governing body itself, or a decision by an official possess-

ing "final policymaking authority" in the area in question, Winder must show that the challenged conduct reflects "practices of state officials ... so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970)). In other words, Winder must demonstrate practices that are sufficiently widespread so as to give rise to an inference of actual or constructive knowledge on the part of the governmental entity employing the defendants. *See Spell v. McDaniel,* 824 F.2d 1380, 1387 (4th Cir.1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988); *Powe v. City of Chicago,* 664 F.2d 639, 651 (7th Cir.1981); *McLin v. City of Chicago,* 742 F.Supp. 994, 998 (N.D.Ill. 1990). Thus, a single incident of unconstitutional conduct is insufficient to establish the requisite custom and usage. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 822–24, 105 S.Ct. 2427, 2435–36, 85 L.Ed.2d 791 (1985); *Hossman v. Blunk,* 784 F.2d 793, 797 (7th Cir.1986); *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985).[1]

In order to meet this burden, Winder points to three incidents where CCDOC officers allegedly filed disciplinary reports against Winder after he voiced his intention to file a grievance against the correctional officer. However, even assuming a custom of using the disciplinary process in retaliation for the filing of grievances, Count II of Winder's second-amended complaint nonetheless must fall. In order to survive the instant motion for summary judgment, Winder must not only establish a policy or custom, but also an injury proximately caused by that policy or custom.

---

1. We observe that the court in *Strauss* suggested in dicta one exception to its requirement that evidentiary allegations of more than a single episode is required. In an effort to distinguish a prior decision, the court indicated that dismissal for failure to state a claim against a municipality may not be warranted if the alleged circumstances are "sufficiently egregious that [the] plaintiff's injury alone suggest[s] an established policy." *Strauss,* 760 F.2d at 769 (citing *Murray v. City of Chicago,* 634 F.2d 365, 367 (7th Cir. 1980), *cert. granted sub nom. Finley v. Murray,*

454 U.S. 962, 102 S.Ct. 501, 70 L.Ed.2d 377 (1981), *cert. dismissed,* 456 U.S. 604, 102 S.Ct. 2226, 72 L.Ed.2d 366 (1982)).

Winder, however, does not contend that this exception is applicable to the present case. Moreover, as this court has previously noted, the egregiousness exception is elusive at best, and without further clarification from the Seventh Circuit we must defer to the general rule announced in *Strauss. See Rosentreter v. Munding,* 736 F.Supp. 165, 169–70 (N.D.Ill. 1990).

*City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *Holmes v. Sheahan,* 930 F.2d 1196, 1200 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 423, 116 L.Ed.2d 443 (1991); *see also Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38 ("[I]t is when execution of a government's policy or custom . . . by those whose edits or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *Strauss,* 760 F.2d at 767 ("Proximate causation between the . . . policy or custom and the plaintiff's injury must be present."). As alleged by Winder, the injuries stemming from the filing of the disciplinary reports is the resulting punishment—*i.e.,* the period of isolation following each incident. This punishment, however, ensued only after an independent hearing by the Prison Disciplinary Board and a finding that Winder committed the acts as charged. Moreover, the punishment was set by the Board, not the defendants. In the absence of any evidence that defendants Ledesma and Bulley had any influence over the Board proceedings, we cannot conclude that the custom of filing the disciplinary reports, whatever the motivation, was the proximate cause of Winder's injuries. *Cf. Hand v. Gary,* 838 F.2d 1420, 1428 (5th Cir.1988) (cited in *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988)) (confronting the issue of proximate causation in the analogous situation of a deputy sheriff sued under § 1983 for false arrest, and concluding that "[a]n independent intermediary breaks the chain of causation unless it can be shown that the deliberations were in some way tainted by the actions of the defendant"). Consequently, we grant Ledesma and Bulley's motion for summary judgment on Count II of Winder's second-amended complaint.[2]

**2.** The break in the chain of causation between the alleged conduct and the harm Winder seeks to have redressed is likewise fatal to his claims against defendants in their individual capacities. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1523–24 (7th Cir.1990). Accordingly, we *sua sponte* grant summary judgment in favor of defendants on Count III of Winder's second-amended complaint.

## V. DENIAL OF DUE PROCESS AT THE DISCIPLINARY HEARINGS (COUNT IV)

In Count IV, Winder alleges that he was denied procedural due process by each of the defendants in that they "refus[ed] and/or discour[aged] plaintiff from presenting witnesses in his defense at CCDOC disciplinary proceedings." Although Winder names all of the defendants in this count, he does not specify whether he is suing them in their individual or official capacities. Accordingly, assuming Winder has sufficiently established a procedural due process violation,[3] we will examine Ledesma and Bulley's potential liabilities in regard to each capacity, personal and official.

A defendant sued in his individual capacity can only be held liable under § 1983 for his individual wrongdoing. *Rascon v. Hardiman,* 803 F.2d 269, 273 (7th Cir.1986); *Duckworth v. Franzen,* 780 F.2d 645, 650 (7th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). As stated in *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983): "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional violation." Thus, § 1983 does not recognize the doctrine of superiors' liability, *McKinnon v. City of Berwyn,* 750 F.2d 1383, 1390 (7th Cir.1984), or the doctrine of respondeat superior. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036.

Furthermore, "a showing of mere negligence on the part of state officials is insufficient to implicate an individual's due process rights for purposes of a claim under § 1983." *Rascon,* 803 F.2d at 273 (citing *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Rather,

**3.** In this count, as with Count II discussed *supra* Section IV, defendants Ledesma and Bulley do not argue that Winder has failed to establish a constitutional violation cognizable under § 1983.

to prevail Winder must establish "that the official knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Id.* at 274; *see also Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985).

Neither the second-amended complaint nor any of the pleadings and depositions submitted in response to the instant motion indicate that either Ledesma or Bulley bore any personal responsibility for the refusal of Winder's request to call witnesses at any of the disciplinary hearings. Indeed, neither defendant participated at those hearings. Nor are they accountable, by virtue of their positions, for the establishment or implementation of the procedures governing such prison disciplinary hearings. In the absence of any evidence indicating that either Ledesma or Bulley knowingly or recklessly caused the alleged deprivation, Winder's Count IV allegations against those defendants in their individual capacities must fall.

As discussed *supra* Section IV, an action brought against the defendants in their official capacities is essentially a suit against the governmental entity which employs them. As such, Winder must demonstrate that the purported denial of due process at the prison disciplinary hearings stemmed from an official policy or custom attributable to the governmental entity itself. *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36; *Powe,* 664 F.2d at 649. In order to meet this burden, Winder does not point to an official policy statement promulgated by the governing body, nor does he claim that the actions of those depriving him of his due process rights represent official policy by virtue of their positions as "final policymakers." Instead, Winder points to the circumstances of his individual hearings, arguing that these occasions of constitutional deprivation are sufficient to constitute a well-established, pervasive practice having the force of law (*i.e.,* a "custom or usage"). Specifically, according to his second-amended complaint and deposition filed in response to the present motion, "on at least two occasions, [Winder] was told that he could not present

witnesses at his disciplinary hearings." Winder Response at 6.

After careful review of each document submitted by Winder, we are convinced that he has set forth facts sufficient to establish that he requested to present witnesses at the May 14, 1990 hearing, but was denied. However, with regard to the second hearing, during which Sander's charges were investigated, Winder's assertion is belied by his own statements:

Q. You mentioned there were two to three other inmates who may have witnessed this. Was this gay or this Petricelli or this inmate that you call a homosexual, was he one of those inmates?

A. Yes, sir.

Q. So he would have be included in the three?

A. Yes, sir.

Q. You were written on a disciplinary report on this, were you not?

A. Yes, sir.

Q. Did you request to call witnesses during that hearing?

A. Not really because I couldn't really get out in the hall—I couldn't really go from dorm to dorm asking to see a person because you're not allowed to go from one dorm.

Q. When you say not really, did you ask—

A. No, sir.

Winder Deposition II at 41. Winder further admits that he did not request to present witnesses at the third hearing—held as a result of the report filed by Ashley—"because he knew that his request would be denied." Winder Response at 7. Far from establishing a course of events or circumstances which demonstrate deliberate indifference to or tacit authorization of the offensive conduct, Winder has substantiated only a single instance where his request to present witnesses in his defense was denied. This type of isolated constitutional deprivation is insufficient to support a finding of liability under *Monell* and its progeny. *See Tuttle,* 471 U.S. at 822–24, 105 S.Ct. at 2435–36; *Hossman,* 784 F.2d at 797; *Strauss,* 760 F.2d at 767.

## VI. CONCLUSION

For the reasons stated above, Ledesma and Bulley's motion for summary judgment is granted as to Counts II and IV, and denied as to Count I. Additionally, we *sua sponte* grant summary judgment in favor of defendants on Count III of Winder's second-amended complaint. It is so ordered.