**Floriano A. SAGAINZA, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–760.**

United States Court of Veterans Appeals.

Submitted May 14, 1991.

Decided Nov. 20, 1991.

Floriano A. Sagainza, pro se.

Raoul L. Carroll, then Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Angela Foehl, were on the brief, for appellee.

Before MANKIN, IVERS and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

The appellant appeals an April 12, 1990, Board of Veterans' Appeals (BVA or Board) decision apparently refusing to reopen his claim for service connection for schizophrenia. Holding that the appellant has submitted new and material evidence to justify reopening of his claim, we vacate the Board decision, retain jurisdiction, and remand the matter to the Board for readjudication and compliance with the duty to assist, in accordance with this opinion.

## I. BACKGROUND

The appellant, veteran Floriano A. Sagainza, served on active duty with the Philippine Scouts from May 1946 to April 1949. According to service medical records, he was seen at a military clinic in September 1948 for complaints about a number of physical ailments. The examiner noted that the veteran appeared very depressed and refused to talk or cooperate. He was diagnosed as having acute inflammation of the nose, pharynx, and mucous membrane. R. at 8–9, 26. There were no reports of psychiatric problems in service, including at his separation examination in April 1949. R. at 28.

The record on appeal is very scanty. Hereafter references to facts not evidenced directly in the record will be qualified by "apparently".

The veteran was apparently hospitalized from October 1974 to January 1975 with a diagnosis of "schizophrenia, chronic undifferentiated type". R. at 31. In March 1975, the Regional Office (RO) apparently denied service connection for the schizophrenia. *Ibid.* On January 23, 1986, the Board apparently issued a decision denying the veteran service connection for a psychiatric disability. *Floriano A. Sagainza,* BVA 89–45011, at 2; Appellee's Motion, at 2. According to the latest BVA decision, the earlier BVA decision had concluded:

A psychiatric disorder, to include schizophrenia, was not incurred in or aggravated by active service, nor was schizophrenia manifested to a compensable degree within one year of service discharge.

*Sagainza,* at 2.

In May 1989, the veteran's sister, acting as his "custodian", reopened his claim at the RO, presenting several letters from the veteran's treating physicians. R. at 36–46.

In her letter, she stated that her brother had been treated for schizophrenia in January 1950, within the one-year, post-discharge presumptive period under 38 U.S.C. § 1112 (formerly section 312) and 38 C.F.R. §§ 3.307, 3.309 (1991). She also requested VA to obtain the "pertinent medical records" of the veteran's treatment by Drs. Vicente, Marfil, and Lindo from January 1950 to July 1984. R. at 37. Among the enclosures to her letter were: (1) a letter dated March 12, 1976, from Dr. Carlos C. Vicente, asserting that the veteran "was placed under my treatment" on January 3, 1950, and "was found by the undersigned [to be] suffering from schizophrenia" for which "he was given several Electro–Convulsive treatment [sic] (ECT)." (R. at 40); (2) a statement dated July 10, 1984, to the Social Security Administration from Dr. Vicente to the same effect; (3) a sworn statement dated April 10, 1985, from Dr. Flora N. Marfil noting that the veteran "was first admitted in the National Mental Hospital [of the Philippines] on October 8, 1974 up to October 8 [sic], 1974, because of on and off occurrence of psychotic behavior ..." and attesting to her evaluation of the veteran on that date as "suffering from long standing mental illness called Schizophrenia Undifferentiated Type" (R. at 44–45); and (4) a statement of Physical Examination from Dr. Florecita F. Lindo, dated February 4, 1988, making the same diagnosis and stating "he is still psychotic ... and is mentally incompetent to be gainfully employed." R. at 46. All of these items, except the last one, were previously part of the record. R. at 32, 51–51.

On June 1, 1989, the RO confirmed the prior denial of service connection, finding that Dr. Lindo's report "is of no probative value in establishing SC [service connection] for the veteran's claimed schizophrenia, in the absence of official records of treatment for this condition during service, or evidence of diagnosis during the presumptive period to a compensable degree." R. at 47–48. A letter, dated July 3, 1989, to the RO signed by Lucia A. Sagainza, the veteran's mother, "as personal custodian for our mentally incompetent son," expressed disagreement with that RO deci-

sion and was treated as a Notice of Disagreement. R. at 49. The RO issued a statement of the case on September 11, 1989, noting:

> Since there are no official records of schizophrenia being noted, claimed, treated or diagnosed during service and there is no evidence of diagnosis of this condition by approved methods during the regulatory period following discharge from service to a degree of at least 10%, there is no basis for the granting of service connection for this disability.

R. at 53.

The mother, "as personal custodian for our mentally incapacitated son," under cover of a letter dated September 18, 1989, forwarded to the RO a completed Appeal to the Board of Veterans [sic] Appeals Form 1–9 signed by her "for Floriano A. Sagainza". R. at 55. Attached to this form were four supplemental sheets; the fourth sheet was signed by the mother "as personal custodian to our mentally incompetent son" and was duly sworn and notarized on September 18, 1989. R. at 58. The mother therein under oath asserted:

> On April 3, 1949, he was honorably discharged from the Army and was sent back home to the Philippines where my son, Floriano's [f]amily observed him to be sleepless, unusually [sic] silent and at times completely refusing to talk. On some occassion [sic] he would start running without apparent reason. Treatment was sought with several "harbilaries" (herbal medicine praticioners [sic]), faith healers and other doctors. Unimproved of his mental condition, he was finally placed under a care and treatment of Dr. Carlos C. Vicente, Physician–Psychiatrist, of 355 J. Fernandez Avenue., Mandaluyong, Mtero [sic] Manila, on *January 3, 1950.* On initial interview he was withdrawn, suspicious, uncooperative and mute. A[s] indicated and for refusing other medications, he was given several Electro Convulsive Treatment [sic] (ECT).
>
> . . . .
>
> I am enclosing my affidavit as mother custodian to our mentally incompetent

son, Floriano A. Sagainza to establish the fact [sic] the comment and treatment by Dr. E.C. Vicente pertinent to my son. . . .

. . . .

My son . . . is still in the Out Patient Service in the said Hospital [the National Mental Hospital, Mandaluyong, Metro Manila] for his service-connection due to SCHIZOPHRENIA, that becomes to [sic] manifest to a degree of 10 percent within nine (9) month [sic] January 3, 1950 from the date of his discharged [sic] on April 1949.

R. at 55, 57 (emphasis in original).

The BVA in an April 12, 1990, decision noted first that the "only new evidence presented" was Dr. Lindo's February 1988 statement and then concluded that "this evidence contains only the record of psychiatric treatment since 1985. It does not change the basic facts relied upon in the prior Board's decision". *Sagainza*, at 4, 5.

A Notice of Appeal and a Motion and Affidavit to Appeal Without Payment of Costs were filed here on August 6, 1990, by the mother "for Floriano A. Sagainza". On October 1, 1990, a Statement of Issues on appeal was filed by the "Mother as personal custodian to our mental incompetent son." On March 25, 1991, the Clerk received a *pro se* brief apparently signed by the appellant himself (the signature closely resembles the signature on his "Enlisted Record and Report of Military Separation" (R. at 29)). The mother thereafter filed a number of purported pleadings with the Court (received on August 2 and 8, 1991) as her son's "custodian", and the Secretary of Veterans Affairs and the Clerk of this Court have been sending copies of all pleadings and orders to the mother as though she were the appellant or the appellant's designated representative. On October 7, 1991, the appellant filed a motion asking that his sister, Adelaida, be substituted for his mother as his personal representative since his mother had died on August 29, 1991. On October 16, 1991, the Court granted the appellant's motion and permitted the sister to appear as his representative under Rule 46(c) of the Court's Rules of Practice and Procedure.

On April 15, 1991, the Secretary moved for summary affirmance on the ground that "the evidence received into the record since the previous Board . . . decision of January 23, 1986, does not provide a new factual basis upon which service connection for any type of psychiatric disability can be predicated under any of the pertinent laws and regulations." Appellee's Motion at 1. For the reasons set forth below, this motion must be denied.

## II. ANALYSIS

### A.

■ As a threshold matter, we must first determine whether this appeal has been duly filed here by "a person adversely affected by" a final BVA decision, as required by 38 U.S.C. § 7252(a) (formerly § 4052). Here the Notice of Appeal (NOA) was timely filed, under 38 U.S.C. § 7266(a) (formerly § 4066) (within 120 days after the mailing of the BVA's decision dated April 12, 1990) by the veteran's mother purporting to act "as personal custodian to our mentally incompetent son". In *Mokal v. Derwinski*, 1 Vet.App. 12, 14(1990), we held that "a custodian" is empowered "to pursue remedies before this Court." Without deciding here that the veteran's mother has been duly constituted as her son's custodian under the laws of the Philippines, we hold that her filing of an NOA was valid either as a filing by the duly-constituted custodian of the veteran or by his personal representative whom we permit as a family member to represent him in proceedings before this Court pursuant to Rule 46(c) of our Rules of Practice and Procedure. It is not necessary to decide whether the veteran's having filed his brief himself somehow constitutes a displacement of his mother as the appellant's personal representative or custodian, since the veteran, not his mother—or his sister for that matter—has always been the appellant of record. In any case, the brief is not a required jurisdictional paper, as is the NOA.

■ We further hold that the there is no imperfection in the appeal before us by

virtue of the fact that the request that the veteran's claim be reopened in May 1989 was made by his sister, Adelaida, "as personal custodian to our mentally incompetent brother, Floriano A. Sagainza". R. at 37. There is no reason to doubt her authority to act in this respect (and the Secretary has not questioned it), and any lack of authority was cured by ratification by the mother's filing of the NOA and the veteran's filing of his brief. Under VA regulations, the sister's request to reopen the veteran's claim was properly accepted as an informal "request for ... reopening", under 38 C.F.R. § 3.155(c) (1991), by "some person acting as next friend of a claimant who is not *sui juris* [having 'capacity to manage one's own affairs', Black's Law Dictionary 1434 (6th ed. 1990) ]." Now, as noted above, the Court has officially recognized the appellant's sister as his representative for these proceedings.

## B.

 "In order to justify the reopening of a claim, a VA claimant must submit 'new and material evidence' [under] 38 U.S.C. § 5108 (formerly § 3008)." *Godwin v. Derwinski*, 1 Vet.App. 419, 424(1991). The word "material" means "there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome [from the January 1986 BVA decision]". *Colvin v. Derwinski*, 1 Vet. App. 171, 174(1991); *Godwin*, 1 Vet.App. at 424.

The BVA stated that the "only new evidence presented for consideration ... is the letter and statement by Dr. Lindo, dated in February 1988" and then seemed to decide that that evidence was not "new and material" because it related only to "psychiatric treatment since 1985" and not "whether the veteran's currently diagnosed schizophrenia had its origins during service or during the presumptive one-year period after separation from service." *Sagainza*, at 5, 4.

We agree with the Board's apparent determination that Dr. Lindo's statement was not "material" since the issue was not the existence or extent of the veteran's current schizophrenia but rather whether that disability had its onset in service as a "chronic psychosis" or, under 38 U.S.C. § 1112(a)(1) (formerly § 312) and 38 C.F.R. §§ 3.307, 3.309 (classifying "psychoses" as "chronic" diseases), had been manifested to a degree of ten percent during the year thereafter. However, the Board was not correct that Dr. Lindo's statement and letter were the only new evidence submitted in support of the attempt to reopen the veteran's claim. Rather, the veteran's mother, as part of the veteran's formal Appeal to the BVA Form 1–9, which she had signed "for" her son, R. at 55, submitted a sworn affidavit, asserting, among other things, that during the veteran's first year after service the veteran's family had "observed him to be sleepless, unussually [sic] silent and at times completely refusing to talk" and that during that time the veteran "would start running without apparent reason" and had finally been "placed under the care and treatment of Dr.... Vicente ... on *January 3, 1950* ... and was found by Dr.... [Vicente to be] suffering under SCHIZOPHRENIA". R. at 55, 57 (emphasis in original). This sworn testimony was both new (in that neither the mother nor anyone else had previously submitted an affidavit to this effect) and "material" because if found credible there is a reasonable probability that it could change the outcome by corroborating a diagnosis of schizophrenia for which the veteran "was given several Electro–Convulsive treatment[s]", according to Dr. Vicente in his March 12, 1976, letter. R. at 40.

Accordingly, we hold that the BVA was in error in holding that there was not new and material evidence to justify reopening of the claim under section 5108. The matter must therefore be remanded for the Board (or the RO or both) to "assess the new and material evidence in the context of the other evidence of record and make new factual determinations". *Jones v. Derwinski*, 1 Vet.App. 210, 215 (1991); *Godwin*, 1 Vet.App. at 424–25.

## C.

 In addition, we hold that the Board, on remand, must attempt to obtain the

580 **580**

veteran's "pertinent medical records" of treatment by Drs. Vicente, Marfil, and Lindo from January 1950 to July 1984, which the veteran's sister on his behalf had requested VA to obtain in her May 5, 1989, letter seeking to reopen his claim. R. at 37. There is no indication in the record that the Department ever responded to this request.

Once a claimant has submitted a well-grounded claim, section 5107(a) (formerly § 3007) requires the Secretary to "assist such a claimant in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a); *Moore v. Derwinski*, 1 Vet.App. 401, 405,(1991); *Murphy v. Derwinski*, 1 Vet.App. 78, 81–82,(1990); *Godwin*, 1 Vet. App. at 425. We find that the veteran submitted "a plausible claim, one which is meritorious on its own or capable of substantiation." *Murphy*, 1 Vet.App. at 81; *Godwin*, 1 Vet.App. at 425. That being so, the burden then shifted to the Secretary to assist in developing "all relevant facts". *Murphy*, 1 Vet.App. at 82; *Godwin*, 1 Vet. App. at 425. The hospital records from 1950 would certainly be highly relevant if they could be produced. The Secretary must "respond to a claimant's request for VA assistance one way or the other." *Godwin*, 1 Vet.App. at 425. In this case, in apparently failing to attempt to obtain the records and in not responding to the sister's request on behalf of the claimant, VA breached its section 5107(a) duty to assist. *See Godwin*, 1 Vet.App. at 427; *Ferraro v. Derwinski*, 1 Vet.App. 326, 334(1991). Although the Secretary suggested that the "requested ... medical records ... [had] been previously considered by the BVA in a prior decision of January 23, 1986" (Response of Appellee, at 4), there is no evidence in the record before us to substantiate this suggestion.

### III. CONCLUSION

For the foregoing reasons, we hold that (1) the BVA erred in apparently finding that the veteran's claim was not properly reopened; and (2) the BVA erred in not seeking the requested hospital records from January 1950 to July 1984. Accordingly, the Court retains jurisdiction and,

the Board's April 12, 1990, decision is vacated and the matter is remanded to the Board for readjudication and further proceedings in accordance with this opinion. The Secretary's motion for summary affirmance is denied. The Secretary shall file with the Clerk and serve upon the appellant a copy of the Board's decision on remand. Within 45 days after such filing, the appellant shall notify the clerk whether he desires to seek further review by the Court.

VACATED AND REMANDED WITH INSTRUCTIONS.