# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1021

MICHAEL W. CANADY, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided        September 15, 2006    )

*Michael W. Canady*, pro se.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Richard Mayerick*, Deputy Assistant General Counsel; *Catherine A. Chase*, Acting Deputy Assistant General Counsel; and *Gary E. O'Connor*, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, MOORMAN, and DAVIS, *Judges*.

KASOLD, *Judge*, filed the opinion of the Court. DAVIS, *Judge*, filed an opinion concurring in part and dissenting in part.

KASOLD, *Judge*: Veteran Michael W. Canady appeals pro se from two July 31, 2002, Board of Veterans' Appeals (Board) decisions. In the first decision (Decision 1), the Board denied an effective date earlier than April 20, 1993, for the award of service connection for post-traumatic stress disorder (PTSD) and for a total disability rating based on individual unemployability (TDIU). Record (R.) at 1-11. In the second decision (Decision 2), the Board dismissed, without prejudice to refiling, a request for revision on the basis of numerous assertions of clear and unmistakable error (CUE) in the Board's April 1991 decision denying service connection for PTSD. R. at 13-30. On November 29, 2002, and again on May 14, 2003, Mr. Canady filed requests for reconsideration as to both decisions with the Board Chairman. Both requests were denied, on March 14, 2003, and September 5, 2003, respectively. On April 26, 2005, a single judge of the Court issued a decision

affirming Decision 1 and dismissing the appeal as to Decision 2 for lack of jurisdiction. On June 20, 2005, the Court granted Mr. Canady's motion for a panel decision and withdrew the single-judge decision. On September 7, 2006, the Court issued an opinion in this matter. The Court will withdraw that opinion and issue this opinion in its stead. For the reasons set forth below, Decision 1 will be affirmed and Decision 2 will be set aside and the matter remanded for adjudication.

## I. BACKGROUND

Mr. Canady served on active duty in the U.S. Army from September 1966 to August 1968, including service in Vietnam. R. at 32. In July 1988, he sought VA benefits for "delayed stress syndrome – Viet-nam." R. at 106-09. In connection with that claim, Mr. Canady underwent a VA examination in September 1988, and the examiner noted that there "is a possibility that Mr. Canady does have some [PTSD,] which has resolved to some extent." R. at 114. The VA regional office (RO) determined that it could not rate Mr. Canady's claim for PTSD based on this diagnosis. R. at 117. In a June 1989 "Reconciliation of Diagnosis" report, a board of three VA staff psychiatrists reported diagnoses of occupational problems and alcohol abuse, and "[p]ersonality disorder not otherwise specified with avoidant, passive-aggressive and self-defeating traits." R. at 128. The board of psychiatrists indicated that it did not appear that Mr. Canady met the criteria for a continuing diagnosis of PTSD. R. at 127. In July 1989, the RO denied service connection for PTSD on the ground that a PTSD diagnosis had not been rendered. R. at 135-36. Mr. Canady appealed (R. at 168, 177-81, 183), and in April 1991, the Board denied his claim for service connection for PTSD (R. at 198-202). Mr. Canady did not appeal and consequently that decision became final.

In April 1993, Mr. Canady filed a claim for VA benefits for, inter alia, "nerves" and "stress." R. at 218-21. After subsequent development and an initial denial of his claim (R. at 300-02, 354-56, 421-23, 433-35, 440, 454-59, 479-80), in July 1996 the RO granted Mr. Canady's claim, awarded service connection for PTSD, and assigned a 30% disability rating effective from February 1994 (R. at 490-95). Mr. Canady disagreed with the assigned rating and, in June 1997, he was assigned a 70% rating for his PTSD and was granted TDIU, both effective from February 1994. R. at 497, 1041-45. Mr. Canady continued to disagree with the effective date assigned and sought an effective date of July 1988, the date of his initial claim. R. at 1047.

2

In an April 1998 decision following a personal hearing, a VA hearing officer granted an earlier effective date of April 1993 for Mr. Canady's award of service connection for PTSD and the assignment of a TDIU rating. R. at 1096-98. In July 1998, Mr. Canady expressed his continued disagreement with the effective date assigned. R. at 1108-10. In November 1999, Mr. Canady also filed a request for revision on the basis of CUE in the April 1991 Board decision. R. at 1135-45. In May 2000, the Board issued two separate decisions: in the first decision, the Board denied an effective date earlier than April 1993 for the award of service connection for PTSD and for a TDIU rating (R. at 1164-73) and, in the second decision, the Board determined that the April 1991 Board decision denying service connection for PTSD was not the product of CUE (R. at 1148-60). On appeal, the Court granted the Secretary's motion to remand both matters. R. at 1176-81, 1184.

On remand, the Board issued the decisions on appeal. R. at 1-30. With regard to the effective date for Mr. Canady's award of service connection for PTSD, the Board in Decision 1 stated the following:

> The threshold issue is whether the veteran submitted a claim for PTSD between April 30, 1991 (the date of the Board decision) and April 20, 1993 (the current effective date), upon which an earlier effective date could be established. Normally, once a veteran files a claim, the claim remains open and pending until final action is taken by the RO. . . .
>
> After a review of the claims file, the Board finds that the only written communication received from the veteran in the period between the Board decision of April 30, 1991, and the VA Form 21-526, which was received on April 20, 1993, was the copy of the June 1991 Power of Attorney and Fee Agreement document between the veteran and his then attorney. However, no specific mention was made regarding the veteran's PTSD claim. Accordingly, this document does not constitute a formal or informal claim for benefits.

R. at 8-9 (citations omitted). The Board further discussed the medical treatment records in the file for the period from April 1991 to April 1993 and concluded that the records showed "no treatment for PTSD during that period," and that Mr. Canady "did not indicate his intent to seek service connection for PTSD during [that] period." R. at 9. It also concluded that there was no legal basis for the assignment of an earlier effective date for Mr. Canady's award of service connection for PTSD. R. at 9. In addition, with regard to the effective date for the assignment of a TDIU rating, the Board noted that PTSD was Mr. Canady's only service-connected disability and concluded that, because a TDIU rating is warranted only "when the veteran is unemployable by reason of a

3

service-connected disability," the Board could not grant an effective date for the TDIU rating that was earlier than the effective date for his award of service connection for PTSD. R. at 9.

With regard to Mr. Canady's request for revision on the basis of numerous CUE assertions in the April 1991 decision, the Board in Decision 2 concluded that "the allegations advanced in the motion do not set forth clearly and specifically the alleged clear and unmistakable errors of fact or law in the Board decision, including how the result of the April 1991 Board decision would have been manifestly different but for the error[s]" and, on that basis, the Board dismissed the request for revision without prejudice to refiling. R. at 30.

On appeal to the Court, Mr. Canady argues that he is entitled to an earlier effective date for his award of service connection for PTSD and for the assignment of a TDIU rating, and that the Board erred by dismissing his request for revision. *See*, *e.g.*, Appellant's Brief (Br.) at 4-9, 15-19, 21. The Secretary argues that there is a plausible basis in the record for the Board's determinations regarding the effective date for Mr. Canady's award of service connection for PTSD and his TDIU rating. Secretary's Br. at 11-13. In that regard, he contends that the effective date was properly based on the date of Mr. Canady's April 1993 reopened claim. *Id.* at 12. The Secretary further asserts that the Board did not err in dismissing, without prejudice to refiling, Mr. Canady's request for revision. *Id.* at 13-18. Finally, in response to the Court's request for supplemental briefing, the Secretary asserts that the Court "may" have jurisdiction to review the dismissal of a request for revision under § 20.1404(b) "for the limited and sole purpose of deciding whether the motion was pled with the required level of specificity such that it should be addressed by the Board on the merits." Secretary's Response to Court Order Dated June 28, 2005, at 3-4.

## II. ANALYSIS

### A. Decision 1 – Effective Date

A Board determination of the proper effective date is a finding of fact that the Court reviews under the "clearly erroneous" standard set forth in 38 U.S.C. § 7261(a)(4). *See Evans v. West*, 12 Vet.App. 396, 401 (1999). In this regard, section 7261(a)(4) directs the Court to "reverse or set aside" any "finding of material fact adverse to the claimant . . . if the finding is clearly erroneous." 38 U.S.C. § 7261(a)(4). "'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a

4

mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Of course, if the Board's "'account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it.'" *Gilbert*, 1 Vet.App. at 52 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)). The determination of the effective date for an award based on an original claim or a reopened claim is governed by 38 U.S.C. § 5110(a), which provides: "Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim[ or] a claim reopened after final adjudication . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a); *see Morris v. West*, 13 Vet.App. 94, 97 (1999); 38 C.F.R. § 3.400 (2005).

It is undisputed that Mr. Canady's original claim for service connection for PTSD was denied in the April 1991 Board decision. R. at 198-202. Mr. Canady did not appeal that decision and it therefore became final. *See* 38 U.S.C. § 7105(a)-(c) (where an appeal is not initiated by filing of a Notice of Disagreement within one year after an RO decision, "the action or determination shall become final"). As the Board found and the record on appeal reflects, Mr. Canady filed a claim to reopen in April 1993 and there was no written communication from Mr. Canady that could be construed as either a formal or informal claim to reopen his PTSD service-connection claim between the final April 1991 Board decision and the April 1993 claim to reopen. *See* 38 C.F.R. §§ 3.155 (2005) (informal claims, to include informal claims to reopen); 3.156 (2005) (claim to reopen previously adjudicated final claims); *see also Sagainza v. Derwinski*, 1 Vet.App. 575, 579 (1991) (recognizing informal claim to reopen under § 3.155(c)); R. at 6, 8-9, 218-21. Accordingly, the Board was not clearly erroneous in finding that the date of the April 1993 claim to reopen (which resulted in the development that led to the award of service connection for PTSD) was the appropriate effective date for Mr. Canady's award of service connection for PTSD. *See Morris*, *supra*. As to Mr. Canady's TDIU rating, the Board correctly noted that PTSD is Mr. Canady's only service-connected disability and that, as a matter of law, the assignment of a TDIU rating could not be effective earlier than the effective date of his award of service connection. *See* 38 C.F.R. § 4.16(a) (2005) (requiring that an award of TDIU relate to one or more service-connected disabilities); *see also* R. at 9. Accordingly, the Court will affirm Decision 1.

B. Decision 2 – Clear and Unmistakable Error

With regard to the Board's dismissal of Mr. Canady's request for revision on the basis of CUE pursuant to 38 C.F.R. § 20.1404(b) without prejudice to refiling, this type of dismissal is designated as "not a final decision of the Board" by 38 C.F.R. § 20.1409(b). Inasmuch as the Court's jurisdiction generally is over only "final" Board decisions,[1] *see* 38 U.S.C. §§ 7252(a) (granting jurisdiction over Board decisions), 7266(a) (authorizing an appellant to file an appeal from a "final" Board decision); *Matthews v. Nicholson*, 19 Vet.App. 202, 205 (2005), the issue is raised as to whether the Court has jurisdiction over Decision 2. Although the Secretary asserts that the Court may have jurisdiction to review the dismissal of a request for revision under § 20.1404(b) for the limited purpose of deciding whether the motion was pled with the required level of specificity, an assertion to which Mr. Canady has not objected, the Court must affirmatively satisfy itself that it has the jurisdiction to hear a case and cannot accept jurisdiction just because it is conceded to by one or both of the parties. *See Hayre v. Principi*, 15 Vet.App. 48, 50 (2001), *aff'd*, 78 Fed. Appx. 120 (Fed. Cir. 2003) (table). We address this issue first because it pertains to our own jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes.'" (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900))); *see also Matthews*, 19 Vet.App. at 204 (questions of jurisdiction "should generally be addressed by the Court whenever they arise" (citing *Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996))).

*1. Finality of a Board Dismissal*

The Court's jurisdiction is defined by Federal statute, and any regulatory enactment that purports to limit the Court's jurisdiction is necessarily of no force or effect.[2] *See Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Gen. Dynamics Land Sys. Div.*, 815 F.2d 1570, 1574 (D.C. Cir. 1987) ("Treaties aside, the Supremacy Clause provides that a federal statute

---

[1] The Board has been granted original jurisdiction to adjudicate a request for revision of a Board decision based on CUE, *see* 38 U.S.C. § 7111, to correct obvious error, *see* 38 U.S.C. § 7103(c), and to review attorney fee agreements, *see* 38 U.S.C. § 5904(c)(2). *See also Matthews v. Nicholson*, 19 Vet.App. 202, 205 (2005) (citing sections 5904(c)(2) and 7111 as examples of statutory provisions granting original jurisdiction to the Board).

[2] Although the Secretary's regulations do not prescribe the Court's jurisdiction, they are otherwise binding on the Agency. *See* 38 U.S.C. § 7104(c) (Board bound by VA regulations); 38 C.F.R. § 20.101(a) (2005) (same).

6

must always be superior to all other forms of law, including regulations." (citing U.S. CONST. art. VI)); *see also* 38 U.S.C. §§ 7252(a), 7266(a). Generally, the Court has jurisdiction over final Board decisions, and whether a decision is final for purposes of our jurisdiction is a question of law that we determine de novo. *See* 38 U.S.C. § 7261(a)(1) (Court shall "decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary"); *see, e.g., Anglin v. West*, 11 Vet.App. 361, 363 (1998) (finding on de novo review that a remand decision from the Board was not a final decision for purposes of Court's jurisdiction); *see also Matthews*, *supra*.

(a) Dismissals in General

The dismissal of an action, even when done without prejudice, is a final decision that is subject to appeal. This is because "denial of relief and dismissal of the case ended this suit as far as the District Court was concerned." *United States v. Wallace & Tiernan Co.*, 366 U.S. 793, 794-95 n.1 (1949); *see also Ciralsky v. CIA*, 355 F.3d 661, 666 (D.C. Cir. 2004) (quoting *Wallace & Tiernan Co.*, *supra*). The same is also generally applicable to a dismissal of a complaint without prejudice when the court does not retain jurisdiction to permit amendment of the complaint and the continuation of the proceedings. *See De Tie v. Orange County*, 152 F.3d 1109, 1111 (9th Cir. 1998) (citing *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (holding that when a complaint is dismissed with leave to amend, the order is nonfinal and not appealable in the absence of a further order terminating the action)); *Gray v. County of Dane*, 854 F.2d 179, 181 n.3 (7th Cir. 1988) ("This court regards dismissals without prejudice as unappealable interlocutory orders 'only when lower courts, either expressly or by implication, retain jurisdiction over the disputes to permit complainants to save by amendment otherwise deficient pleadings.'" (quoting *In Re Ohio River Co. v. Carillo*, 754 F.2d 236, 238 (7th Cir. 1985))). Similarly, when a curing amendment is not possible or the plaintiff chooses to stand on the filed pleadings and not file an amended complaint, the dismissal of the complaint generally is appealable.[3] *See Ciralsky*, 355 F.3d at 666 n.1 (citing *Welch*

---

[3] For example, when a district court determines that amending a complaint would be an exercise in futility but nonetheless dismisses the complaint without prejudice, *see De'Lonta v. Angelone*, 330 F.3d 630, 633 n.3 (4th Cir. 2003), when a complaint is dismissed without prejudice for failure to effect service of process, *see Welch v. Folsom*, 925 F.2d 666, 668 (3d Cir. 1991)), or when the statute of limitations will run in the interim period, *see Ahmed v. Dragovich*, 297 F.3d 201, 207 (3d Cir. 2002); *Ordower v. Feldman*, 826 F.2d 1569, 1672 (7th Cir. 1987); *see also Ciralsky*, 355 F.3d at 666 n.1.

7

*v. Folsom*, 925 F.2d 666, 668 (3d Cir. 1991) ("If the plaintiff cannot cure the defect . . . or elects to stand on the dismissed complaint, however, . . . the order of dismissal is final and appealable.")).

(b) Board Dismissal of a Request for Revision Based on CUE

Pursuant to 38 C.F.R. § 20.1404(b) (2005), when a request for revision fails to comply with the pleading requirements, it "shall be dismissed without prejudice to refiling under [subpart O, 38 C.F.R. §§ 20.1400-1411]." Although the request for revision is dismissed without prejudice, it nevertheless is dismissed, and adjudication will begin again only upon the filing of a new request. There is no procedure for simply amending the request for revision and permitting the process to continue in the same proceeding. Thus, the dismissal of a request for revision has the same effect as a dismissal of an action without prejudice or dismissal of the complaint when amending action is not permitted such that the proceedings could continue.

Moreover, because each request for revision on the basis of CUE must be adjudicated as a separate and distinct request for revision, an original request for revision rejected by the Board for inadequate pleading would be foreclosed from further review if not appealable, because that request must be modified before it is refiled or it presumably would suffer another dismissal if refiled without modification. Inasmuch as only the modified request for revision would ultimately be decided by the Board, an appeal of that decision would not permit judicial review of the previously rejected request for revision. Thus, when a request for revision on the basis of CUE is dismissed by the Board for lack of specificity, it is indeed a final decision with regard to that request, thus leaving appellate review as the only remedy if such dismissal was in error.[4] In this sense, although the dismissal of a request for revision is not intended to be a final decision of the Board for res judicata purposes, 38 C.F.R. § 20.1409(b); *see also Andre v. Principi*, 301 F.3d 1354, 1361 (Fed. Cir. 2002) (each theory of CUE must be adjudicated as a separate and distinct request for revision so that preclusive effect of res judicata bars refiling only as to that particular assertion of CUE), if

---

[4] Extraordinary relief generally is not an appropriate remedy for a Board dismissal based on inadequate pleading. *See Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 382 (1953) (the "traditional use of the writ in aid of appellate jurisdiction both at common law and in the Federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so" (internal quotation omitted)); *De Beers Consol. Mines v. United States*, 325 U.S. 212, 217 (1945) (mandamus may "not be availed of to correct a mere error in the exercise of conceded judicial power"); *see also Lamb v. Principi*, 284 F.3d 1378, 1384 (Fed. Cir. 2002) ("'extraordinary writs cannot be used as substitutes for appeals'" (quoting *Bankers Life & Cas. Co.*, 346 U.S. at 383)).

the Court lacks jurisdiction to review such a dismissal, the effect, as to that specific request for revision, would be that of a final decision.

In light of the above, we hold that a Board decision dismissing a request for revision without prejudice to refiling pursuant to § 20.1409(b) is a final decision of the Board for purposes of the Court's jurisdiction.

### 2. *The Board's Dismissal*

Although the Board correctly noted the requirement that a request for revision on the basis of CUE must be pled with specificity, to include why the outcome would have been manifestly different but for the alleged error, *see Fugo v. Derwinski*, 6 Vet.App. 40, 44 (1993); *see also Bustos v. West*, 179 F.3d 1378, 1380-81 (Fed. Cir. 1999) (expressly adopting "manifestly changed the outcome" language); 38 C.F.R. § 20.1404(b), it failed to take into consideration that the Board is nonetheless required to read a pro se request for revision sympathetically, *see Andrews v. Nicholson*, 421 F.3d 1278, 1282-83 (Fed. Cir. 2005); *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (with respect to "all pro se pleadings, [Board and Secretary are required to] give a sympathetic reading to the veteran's filings" (citing *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001))). The requirement to sympathetically read the pleadings of a pro se claimant applies even though regulations set forth specific pleading requirements. For example, the Board has been found to have erred when it failed to sympathetically read the claimant's pleadings to discern an informal claim, even though the pleadings did not specifically "identify the benefit sought" as required under 38 C.F.R. § 3.155(a). *See Roberson*, 251 F.3d at 1382-84.

In conducting a sympathetic reading of a request for revision, the Board should view the claim in light of the fact that it is the assertion of CUE itself that requires specificity, because it is the adjudication of that assertion upon which res judicata ultimately will act. *See Andre*, 301 F.3d at 1361 (each specific theory underlying CUE attack on final decision constitutes separate claim); *Link v. West*, 12 Vet.App. 39, 44 (1998) ("Under the principle of res judicata, 'once there is a final decision on the issue of [CUE] that particular [request for revision on the basis of CUE] may not be raised again.'" (quoting *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc))). On the other hand, a manifestly changed outcome might be inferred from pro se pleadings, even though not explicitly stated. *See Sondel v. West*, 13 Vet.App. 213, 221 (1999) ("when it is clear, on the face of the decision being assailed for CUE, that the error alleged did in fact occur and would manifestly

have changed the outcome of the case, the Court will reverse"); *Olson v. Brown*, 5 Vet.App. 430, 434 (1993) (if assertion that RO did not properly apply the "clear and convincing" standard required to terminate a total disability rating based on individual unemployability is substantiated, such a failure "would have manifestly changed the outcome of the decision" because the standard to reduce the benefits had not been met); *see also Roberson*, *supra*.

Moreover, although the Board cannot adjudicate a CUE theory that is wholly distinct from that which is presented, *see Huston v. Principi*, 18 Vet.App. 395, 402 (2004); *see also Jarrell v. Nicholson*, ___ Vet.App. ___, ___, No. 03-0572, slip op. at 8-9, 2006 WL 2434262, at *5-6 (Aug. 24, 2006) (en banc); *but see* 38 U.S.C. §§ 7103(c) (authorizing Board sua sponte to correct obvious error in the record), 7111(c) (authorizing Board sua sponte to review for CUE in prior Board decisions), a sympathetic reading of the CUE theory may result in clarifying modifications, *cf. Jordan v. Principi*, 17 Vet.App. 261, 270-71 (2003) (holding that on appeal to the Board an appellant is not bound to the exact words used in a request for revision on the basis of CUE in a Board decision and may "rephrase and provide additional argument and support for the same basic CUE argument presented"), *aff'd sub nom. Jordan v. Nicholson*, 401 F.3d 1296 (Fed. Cir. 2005).

In this case, the Board identified numerous assertions of CUE in the prior proceedings, but it dismissed all of them because Mr. Canady failed to set forth what the manifestly different outcome would have been but for each CUE. Because a sympathetic reading should be conducted by the Board in the first instance, we will not address all of the allegations of error. However, we note that for some of Mr. Canady's asserted CUE theories, the manifestly changed outcome is arguably obvious from the context of his pleadings. For example, Mr. Canady's original claim for disability compensation on the basis of service-connected PTSD was denied by the RO in July 1989 because the required diagnosis of PTSD had not been made (R. at 136), and Mr. Canady asserted that the Board in April 1991, in considering the appeal of the RO decision, failed to recognize that he had been diagnosed with PTSD in a September 1988 VA examination. Without deciding the merits of Mr. Canady's contention, we note that the implied manifestly different outcome is the grant of an earlier effective date for the grant of service connection for Mr. Canady's PTSD. On remand, the Board should identify those assertions of CUE, otherwise properly pled, for which a manifestly changed outcome can be inferred from the pleadings upon a sympathetic reading, and proceed to decide them on the merits.

10

Although the Board dismissed Mr. Canady's request for revision and all assertions of CUE without prejudice, we further note that its statement of reasons or bases appears to be written in support of a finding on the merits on some of the theories of CUE. Again, without addressing the merits of each allegation, we note as an example Mr. Canady's assertion that there was CUE in the April 1991 Board decision because the Secretary failed to provide him, inter alia, with an adequate Statement of the Case (SOC) or an opportunity for a personal hearing. R. at 15. The Board expressly determined that the SOC was adequate in that it provided Mr. Canady with "the correct laws and regulations." The Board further determined that Mr. Canady "specifically [indicated] that he did not desire a personal hearing." R. at 15-16.

Additionally, the statement of reasons and bases indicates that the Board believed some assertions of CUE to be procedurally defective for alleging error that amounted to a differing view of the weighing of the facts. Such an assertion, like an assertion that the Secretary did not comply with his duty to assist, cannot form the basis of a successful request for revision. *See Szemraj*, 357 F.3d 1376 ("[T]he failure to assist in developing the evidentiary record cannot constitute CUE . . . ."); *Livesay v. Principi*, 15 Vet.App. 165, 173 (2001) (en banc) ("In order for there to be a valid claim of [CUE], . . . [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." (quoting *Crippen v. Brown*, 9 Vet.App. 412, 418 (1996))). Nonetheless, such allegations are not properly dismissed as pleading errors when the request for revision otherwise meets the requirements of a properly pled request for revision; rather, a request for revision based on such CUE theories is to be denied on the merits because such purported errors cannot constitute CUE. *See id*.

For the reasons stated above, the decision of the Board will be set aside. *See Simmons v. Principi*, 17 Vet.App. 104, 115 (2003) (Board's statement of reasons or bases is inadequate when it is "neither helpful to the veteran, nor clear enough to permit effective judicial review, nor in compliance with statutory requirements"). On remand, the Board should be careful to identify and adequately discuss in its statement of reasons and bases those assertions of CUE that can and should be decided on the merits and it should distinguish them from those that fail to be pled with the requisite specificity, given a sympathetic reading, such that they warrant dismissal without prejudice under § 20.1404(b). *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (Board required to include in its decision a written statement of the reasons or bases for its findings

11

and conclusions on all material issues of fact and law presented on the record); *Gilbert*, 1 Vet.App. at 56-57 (1990) (same).

## III. CONCLUSION

The Court's September 7, 2006, opinion is withdrawn, and this opinion is issued in its stead. For the foregoing reasons, Decision 1 is AFFIRMED. As to Decision 2, the Board's decision to dismiss Mr. Canady's request for revision for lack of specificity is SET ASIDE and the matter is REMANDED for further action and adjudication consistent with this opinion. The Court expects that the Board will provide expeditious treatment of the remanded matter. *See* 38 U.S.C. § 7112.

AFFIRMED as to Decision 1; SET ASIDE and REMANDED as to Decision 2.

DAVIS, *Judge*, concurring in part and dissenting in part: I join in the majority's opinion insofar as it affirms the effective date established by the Board in Decision 1. There is no reason to suggest that an effective date earlier than the date of the award of service connection is warranted here. As to Decision 2, however, I believe that the majority's finding that this Court possesses jurisdiction over a Board's dismissal of a CUE motion for inadequate pleading is contrary to the law applied by the majority of circuits and aggrandizes this Court's jurisdiction at the expense of veterans. It is the particular province of the Board to determine pleading sufficiency, and the Secretary has decided that such determinations are not final appealable orders; this Court should give deference to the Secretary's characterization of the Board's actions. The majority, concerned by the improbable situation where the appellant elects to stand on the grounds of his dismissed motion or where the Board arbitrarily dismisses CUE motions, ensures that processing time for cases will be expanded while this Court deals, not with the merits of the appellant's issues, but with the matter of pleading requirements. If this Court finds that the Board erred, the case still would need to be remanded to the Board for a decision on the merits in the first instance, prolonging meaningful adjudication and judicial review. For these reasons, and for the reasons that follow, I must respectfully dissent.

### A. Finality of Dismissals Without Prejudice

In Federal appellate courts, generally, an order dismissing a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without

affecting the cause of action. *See Ciralsky v. CIA*, 355 F.3d 661, 666 (D.C. Cir. 2004); *see also De'Lonta v. Angelone*, 330 F.3d 630, 633 n.3 (4th Cir. 2003) (noting that dismissal of a complaint without prejudice is not normally appealable); *Welch v. Folsom*, 925 F.2d 666, 668 (3d Cir. 1991) (recognizing that dismissals of complaints without prejudice are generally not final for appellate purposes); *Elfenbein v. Gulf and W. Indus., Inc.*, 590 F.2d 445 (2d Cir. 1978). Courts have crafted exceptions to this rule, such as considering the dismissal as final where refiling the complaint is barred by a statute of limitations or res judicata, where no amendment can cure the defects in the case, or where a district court divests itself of jurisdiction thereby terminating the action, rather than just the complaint; the key factor, however, is the lower court's intent. *See Norblad v. Veronex Techs., Inc.,* 66 Fed. Appx. 741 (9th Cir. 2003) ("In determining whether or not the district court's ruling was final, the focus is the 'effect the court intended it to have, rather than the label placed upon it.'" (quoting *Montes v. United States*, 37 F.3d 1347, 1350 (9th Cir. 1994))); *see, e.g., De Tie v. Orange County*, 152 F.3d 1109, 1111 (9th Cir. 1998); *Welch*, 925 F.2d at 668; *Ordower v. Feldman*, 826 F.2d 1569, 1572 (7th Cir. 1987); *Bragg v. Reed*, 592 F.2d 1136, 1138 (10th Cir. 1979). Thus, the Court has a choice to make in deciding which path it will follow; the Court can follow the general rule and treat the dismissal as interlocutory, or find that an exception should apply and treat the dismissal as final. While on the surface either choice appears reasonable, other courts' concerns giving rise to exceptions to the general rule are inapplicable; here, an appellant can always amend the motion for revision based on CUE, no statute of limitations exist, res judicata is not an issue, and the Board retains jurisdiction. Importantly, in this case, it appears the Board did not intend to, nor could it, relinquish itself of jurisdiction over a subsequent, properly pled request for revision. Finally, caseload considerations, judicial economy, and discretion given to the administrative agency for factfinding in the first instance leads to the better choice of treating the dismissals as interlocutory.

However, the majority determines that the Board's dismissal of a request for revision based on CUE is a final decision for purposes of this Court's jurisdiction. *Ante* at 9. In so concluding, the majority acknowledges that, when determining whether a dismissal without prejudice is final for the purpose of appeals, courts have recognized a difference between dismissals of complaints and dismissals of actions or dismissals of the case. *See ante* at 7-8. Nonetheless, the majority inexplicably determines that this case is analogous to a dismissal of an action. While the majority

13

appropriately relies on the U.S. Supreme Court case *United States v. Wallace & Tiernan Co.*, 336 U.S. 793 (1949), for the proposition that dismissal of an action is a final decision, the majority fails to take the analysis further. The key here, as in *Wallace & Tiernan*, is the intent of the district court. *See id.* at 794 n.1 ("That the dismissal was without prejudice to filing another suit does not make the cause unappealable, for denial of relief and dismissal of the case ended this suit *so far as the [d]istrict [c]ourt was concerned*." (emphasis added)). Importantly, the majority fails to apply the facts here to its analysis, and fails to recognize that the dismissal of a complaint is like the dismissal of an action only when it is the intent of the lower court to dismiss the complaint permanently. If the majority were to apply the facts, it would have to acknowledge that the Board did not intend to permanently dismiss the case; rather, it left the door open for the appellant to refile.

The majority suggests several reasons to support this conclusion. First, it finds persuasive that "there is no procedure for amending the request and permitting the process to continue" and that adjudication ends on dismissal of the request, reinitiated by filing a new request. *Ante* at 8. This observation fails to recognize that when a complaint is dismissed without prejudice, generally, that dismissal too ends the adjudication until the case is reinitiated by the filing of a new complaint. Next, the majority makes the circular argument that a Board decision dismissing a request for revision is final because that particular request must be modified or "it presumably would suffer another dismissal," *id.*; however, it is axiomatic that a dismissal of a particular complaint, or any other pleading with leave to amend would be dismissed again if it was not modified. The majority further reasons that "only the modified request for revision would ultimately be decided by the Board, [and] an appeal of that decision would not permit judicial review of the previously rejected request for revision." *Id.* Even so, if an appellant modifies and resubmits a motion that is adjudicated by the Board, then the initial motion would be of no moment; the appellant would receive an adjudication on the merits–one that could be appealed to this Court if the appellant disagreed with the outcome. As long as a subsequent motion was adjudicated on the merits, what need would an appellant have for review of a prior insufficiently pled motion? As shown below, the majority would be hard pressed to find any court that would consider a dismissal of a pleading "with leave to amend" a final decision of the lower court just because that particular pleading could not be resubmitted without suffering the same fate. Nonetheless, I do not believe that the procedure

14

for amending the request or the mere fact that the appellant cannot repeatedly resubmit the same motion should govern the analysis in this case.

Guidance on treatment of dismissals without prejudice can be gleaned from Federal appellate courts whose review of underlying decisions is limited to "final decisions" of district courts. *Compare* 28 U.S.C. § 1291 (conferring jurisdiction over appeals from final decisions of district courts) *with* 38 U.S.C. §§ 7266(a) (mandating that a claimant seeking to appeal a decision to this Court must first obtain a "final decision of the Board") *and* 7252(a). Like VA's regulations governing pleading requirements for CUE motions, Federal courts have pleading requirements for complaints filed in their courts. *Compare* FED. R. CIV. P. 8(a) (requiring a short and plain statement of jurisdiction, claim, and relief sought) *with* 38 C.F.R. § 20.1404(b) (requiring clear and specific allegations of the "errors[] of fact or law in the Board decision, the legal or factual basis for such allegations, and why the result would have been manifestly different but for the alleged error").

The majority of Federal courts employ various reasons for the distinction between dismissals of complaints without prejudice and dismissals of actions without prejudice, the latter being a final, appealable decision. *See De Tie*, 152 F.3d at 1111 (noting that a dismissal of an action is final, but dismissal of a complaint is nonfinal); *see also Elfenbein*, 590 F.2d at 448 (recognizing that it is well settled that a dismissal granting leave to amend is not final, and concluding that if the district court dismisses the complaint without further comment, then the dismissal order is final because in that case the district court intended to terminate the action). However, key to the determination that the decision is final, is a clear manifestation by the trial court that it intends to end the case. *See Great Rivers v. Farmland Indus.*, 198 F.3d 685, 689 (8th Cir. 1999) (recognizing that to be a final decision, there must be a "clear and unequivocal manifestation by the trial court" that, as far as the court is concerned, that is the end of the case); *see also Berke v. Bloch*, 242 F.3d 131, 135 (3d Cir. 2001) ("[I]f the order specifically contemplates further activity by the [d]istrict [c]ourt, it is not considered final."); *Gray v. County of Dane*, 854 F.2d 179, 182 n.4 (7th Cir. 1988) (finding the dismissal final where "there is no indication that the district court intended to retain jurisdiction. The clear purpose . . . was to end the proceeding in the district court and to permit immediate appeal"); *Elfenbein*, 590 F.2d at 448 n.1 (noting that the Ninth Circuit Court of Appeals regards dismissals of a complaint as final only where the district court makes clear that "that the action could not be saved by any amendment of the complaint"). That manifestation of intent is fundamental, even in those circuits

15

that employ an alternative basis to create finality in the lower court's dismissal. Indeed, the majority relies upon *Ciralsky*, *supra*, for the proposition that a lower court decision may be appealed if amendment to the complaint is impossible, or if the plaintiff chooses to stand on the pleadings as filed.[1] *See ante* at 7-8. However, in *Ciralsky*, the court gave the appellant 21 days to file an amended complaint, and expressly warned the plaintiff that if he chose not to file an amended complaint within that time, the plaintiff's case–not merely the complaint–would be dismissed. *See Ciralsky*, 355 F.3d at 667. In contrast, here, neither did the appellant indicate that he chose to stand on his motion as filed, nor did the Board *intend* to completely dismiss the appellant's action. Rather, it intended to retain jurisdiction, stating that the appellant may file an amended motion, and no time limit was placed on the appellant to do so.

Where there is a dismissal of a complaint, similar to a Board's dismissal of a request for revision based on CUE, leave to amend the pleadings is generally implied. *See Micklus v. Greer*, 705 F.2d 314, 317 n.3 (8th Cir. 1983) ("[U]sually when a plaintiff's complaint is dismissed for failure to comply with Rule 8(a) [of the Federal Rules of Civil Procedure], that dismissal is to be with leave to amend."); *Bertucelli v. Carreras*, 467 F.2d 214, 215 (9th Cir. 1972) (noting that when a complaint is dismissed because of a defective pleading, "ample opportunity for amendment should be provided in all except the most unusual cases"). "[C]ourts often regard the dismissal without prejudice of a complaint as 'not final, and thus not appealable . . . because the plaintiff is free to amend his pleading and continue the litigation.'" *Ciralsky*, 355 F.3d at 666 (quoting *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003), and citing *WMX Techs. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997), and 19 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 201.14 (3d ed. 2003)); *see also Am. Nat'l Bank and Trust Co. of Chicago v. Equitable Life Assurance Soc'y of the U.S.*, 406

---

[1] The Third and Ninth Circuit Courts of Appeal have adopted a rule of finality that finds a complaint dismissed without prejudice as nonfinal except in special circumstances, such as when the plaintiff cannot cure the defect that led to the dismissal or, a rule particular to those two circuits, the plaintiff elects to stand on the dismissed complaint. *See, e.g., Welch*, 925 F.2d at 668; *Lopez v. City of Needles*, 95 F.3d 20 (9th Cir. 1996). Put another way, those circumstances "must be such as to make it clear that the court determined that the action could not be saved by any amendment of the complaint . . . thereby entitling the plaintiff to assume he had no choice but to stand on his complaint." *Ruby v. Sec'y of U.S. Navy*, 365 F.2d 385 (9th Cir. 1966). Here, the majority fashions its approach, in part, from a rule that is particular to the Third and Ninth Circuits although other circuits generally treat such dismissals as interlocutory, even when the plaintiff "stands on" his or her complaint. It is important to note that, in this case, there is no indication by the Board that the appellant could not cure the defect in his motion; to the contrary, the Board left the door open for amendment by stating that he was free at any time to resubmit a CUE request. I also see no reason to include in our finality rule an exception that an appellant may "stand on his complaint." Adopting such a rule is contrary to other circuits, and here, would act essentially as an appeal of right, ignoring the intent of the Board and the principle of judicial economy.

16

F.3d 867 (7th Cir. 2005) (reasoning that a dismissal is final where the district court washed its hands of the case and amending is futile); *Elmore v. Lloyd*, 30 Fed. Appx. 98 (4th Cir. 2002) ("Because Elmore can exhaust his state court remedies and re-file his petition, his appeal of the dismissal without prejudice is interlocutory and not subject to appellate review . . . ."); *Berke*, *supra* (noting that a dismissal is final and appealable if the party seeking relief renounces any intention to reinstate litigation or if the district court believes its ruling ends the litigation); *Welch*, 925 F.2d at 668 (noting that, generally, orders dismissing complaints without prejudice are not final "because the plaintiff may cure the deficiency and refile the complaint"); *Elfenbein, supra* (recognizing that dismissal granting leave to amend is not final, but where the dismissal ends the action, that order is final); *but see Davis Forestry Corp. v. Smith*, 707 F.2d 1325 (11th Cir. 1983) (reasoning that a dismissal without prejudice can be appealed but noting, in that case, that the district court referred to its order as a "final order of dismissal"). Courts adopting this rule reason that "the plaintiff may be able to amend his complaint to cure whatever deficiencies had caused it to be dismissed." *Coniston Corp. v. Vill. of Hoffman Estates*, 844 F.2d 461, 463 (7th Cir. 1988); *Gray*, *supra* (recognizing that dismissals without prejudice are unappealable interlocutory orders "only when lower courts, either expressly or by implication, retain jurisdiction over the disputes to permit complainants to save by amendment otherwise deficient pleadings").

Similarly compelling are the arguments presented by courts that determine that finality for appellate purposes is based on the effect that the dismissal has on the case. *See Carr v. Grace*, 516 F.2d 502, 503 n.1 (5th Cir. 1975) ("The appealability of an order depends on its effect rather than its language."). If the court's dismissal allows the complainant to file an amended complaint, the dismissal is not considered final. *See Ordower*, 826 F.2d at 1572. However, if a new complaint cannot be filed "'because of limitations problems or otherwise, the action is treated as final and the order is appealable.'" *Id.* (quoting *Bragg*, 592 F.2d at 1138); *see also Campbell v. Mullins*, No. 05-6024, 2005 U.S. App. LEXIS 17252 (10th Cir. Aug. 16, 2005) (finding that if dismissal without prejudice finally disposes of the case so that it is effectively excluded from the Federal court, then it is a final, appealable decision).

Additionally, the U.S. Supreme Court determined that a decision is considered final for purposes of Federal appellate jurisdiction when the district court's decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Quackenbush v. Allstate*

*Ins. Co.*, 517 U.S. 706, 712 (1996); *see Am. Nat'l*, *supra*. Conversely, if the order contemplates further activity by the district court that is not merely ministerial, it is not considered final. *See Berke,* 242 F.3d at 135. The purpose for avoiding the piecemeal litigation encouraged by the majority is that, as a general rule, "'a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated.'" *Quackenbush*, 517 U.S. at 712 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).

The history of 38 C.F.R. § 20.1404 (2005) also provides guidance here. Previously, the law required that the Board deny as a matter of law insufficiently pled CUE requests. *See* 38 C.F.R. § 20.1404 (2000). After a denial, the appellant would be barred from pursuing that request further. *See Disabled Am. Veterans v. Gober*, 234 F.3d 682, 704 (Fed. Cir. 2000). When the regulation was revised, it ensured that if an appellant filed an insufficient CUE motion, that would not be the end of their request. In accordance with *Disabled American Veterans*, the Secretary amended § 20.1404 by requiring the Board to dismiss, rather than deny, requests that are inadequately plead "without prejudice to refiling." 66 Fed. Reg. 35,902. The Federal Register reflects that, to conform to that change, § 20.1409(b) was amended "to provide that the dismissal without prejudice of a CUE motion is not a final decision of the Board." 66 Fed. Reg. 35902; *see* 38 C.F.R. § 20.1409 (2005) ("[A] dismissal without prejudice under [38 C.F.R. § 20.1404(b)] . . . is not a final decision of the Board.").

Based on the foregoing, I believe that dismissals of motions for revision based on CUE more closely resemble dismissals of complaints than dismissals of actions. A dismissal based on inadequate pleading does not reach the merits of the issue, and by regulation, the Board dismissal must be without prejudice so as to permit the appellant the opportunity to amend the motion and refile. Additionally, a key consideration in the above cases is whether the district court believes its ruling ends the litigation. *See Great Rivers*, *supra*. That same question is critical here: Does the Board believe its ruling ends the litigation? In this case, and with all other motions for revision based on CUE, the Board retains jurisdiction, and an appellant may file an amended motion directly with the Board instead of receiving an adjudication from the RO first. *See* 38 U.S.C. § 7111(e) (noting that requests for revision based on CUE should be submitted directly to the Board). Moreover, here the Board order stated that the appellant failed to plead CUE with the requisite

specificity, but then specifically contemplated further activity when it added that "[t]he veteran is thus free at any time to resubmit a CUE [request] with respect to the April 1991 Board decision." R. at 30. Although the Board did not require repleading within a certain period of time, it left the door open for the appellant to refile with the Board a request for revision based on the same underlying facts at any time. *See Berke*, 242 F.3d at 135. Because the appellant's motion can be saved by amendment, the appellant is not barred from refiling based on res judicata, a statute of limitations, or otherwise, and because the Board retains jurisdiction over the case, the Board's dismissal without prejudice to refiling is essentially interlocutory in nature and should not be reviewed here.

### B. 38 C.F.R. § 20.1409

The majority provides only a cursory reference to 38 C.F.R. § 20.1409, *see ante* at 6, which regulation seems, at least on its face, determinative of the issue here. That regulation provides that the Board's dismissal without prejudice for failure to adequately plead a motion for revision based on CUE "is not a final decision of the Board." 38 C.F.R. § 20.1409. The Secretary is expressly authorized to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws." 38 U.S.C. § 501. Because substantial deference is given to the Secretary's interpretation of a statute, his interpretation will not be set aside unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Gallegos v. Principi*, 283 F.3d 1309, 1312 (Fed. Cir. 2002) (noting that, unless the statute speaks "directly" "to the precise question," under *Chevron* deference,[2] "any ensuing [agency] regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute" (alteration in original) (citing *United States v. Mead Corp*., 533 U.S. 218, 229 (2001))). While I acknowledge that the Secretary's regulations cannot confer jurisdiction on or divest jurisdiction from this Court, here, as noted above, the Secretary's regulation is a reasonable characterization of the Board's action. Because the Agency's regulation must be accorded *Chevron* deference, I believe that the majority should have deferred to the Secretary's characterization of the Board action as set forth in 38 C.F.R. § 20.1409.

### C. Use of Petitions for Extraordinary Relief

---

[2] The concept of "*Chevron* deference" refers to the deference afforded to an agency regulation as announced in *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984).

19

Contrary to the majority's conclusion, appellate review is not the only remedy for the erroneous dismissal of a request for revision. *See ante* at 8. In the unlikely event that the Board repeatedly dismissed a request for revision based on CUE and thereby abused its discretion, a petition for extraordinary relief is available. As a preliminary matter, the Board has no incentive to arbitrarily dismiss cases for lack of pleading specificity. This is particularly so in light of the Federal Circuit's consistent mandate that the Board give a sympathetic reading to a pro se appellant's pleadings. *See Andrews v. Nicholson*, 421 F.3d 1278, 1281 (Fed. Cir. 2005); *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001). The dismissal is an invitation to replead, and an appellant's subsequent filing would still need to be adjudicated. The only way that the Board could effectively conclude a case would be to decide it on the merits, and allow the appellant to appeal the case to this Court.

"Issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed." *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 403 (1976). In the interest of judicial economy, petitions are to be used in only extraordinary circumstances, thus one arguably erroneous dismissal would not qualify. *See DeBeers Consol. Mines, Ltd. v. United States*, 325 U.S. 212 (1945) (noting that writs of mandamus cannot be used "to correct a mere error in the exercise of conceded judicial power. But when a court has no judicial power to do what it purports to do–when its action is not mere error but usurpation of power–the situation falls precisely within the allowable use [of writs]"). "The scope of a mandamus proceeding must be narrowly maintained else the same impediments to justice and disservices to litigants produced by the appeal of an interlocutory order would be present without compelling countervailing considerations." *Kasey v. Molybdenum Corp. of Am.*, 408 F.2d 16, 19-20 (9th Cir. 1969). Although the majority is correct that an appellant's belief that the Board erred does not, standing alone, provide a basis for a petition, a petition would be appropriate in the unlikely event that the Board repeatedly and arbitrarily dismisses an appellant's motion. Such multiple baseless dismissals by the Board would fall within this Court's ambit, and a petition could be utilized to compel the Board to perform its duty. *See Kerr*, 426 U.S. at 402 (noting that the remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances to confine a lower court to its lawful jurisdiction or to compel it to perform its duty to exercise authority); *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 382 (1953). The majority fashions its holding today to allow appellants, as a matter of right, an appeal to this Court from the

Board's dismissal of their motion for revision based on CUE, even though the appellant can always amend his filing and state his claim again directly to the Board. Because I believe that a petition for extraordinary relief could be used in the unlikely event that the Board repeatedly acts arbitrarily, there is simply no benefit that could arise from the majority's holding today.

The majority's opinion will expand this Court's jurisdiction to review matters addressing not the merits of the appellant's argument, but whether a CUE motion contains specific and clear allegations. Caselaw from the majority of other circuits demonstrates that those courts refrain from addressing this type of matter to foreclose the possibility of piecemeal litigation. This decision has the potential to increase the time it will take for an appellant to receive a final judgment in his or her case. Even if this Court were to find that the Board erred and the appellant had plead with specificity, the Court could not adjudicate the claim; at most, it could remand the case back to the Board for the Board to address the issues in the first instance. Alternatively, if we were to affirm the Board's holding, that determination has no preclusive effect; by statute, the appellant can always amend and refile the motion with the Board. *See* 38 U.S.C. § 7111(e). Because I believe the Court's decision will only have the effect of expanding our caseload to include review of administrative matters and lengthening the time it takes for an appellant to receive a decision on the merits, I respectfully dissent.